OPINION OF THE COURT
Guy P. De Phillips, J.
In this neglect proceeding (Family Ct Act art 10) the petitioner Commissioner of Social Services of the City of New York moves by notice of motion dated January 29, 1990 pursuant to Family Court Act § 1061 for an order vacating this court’s prior directive of August 2, 1989 that a termination of parental rights proceeding be filed by the Commissioner on the child’s behalf. This directive was memorialized in an order dated October 6, 1989 whereby this court pursuant to Family Court Act § 1055 (d) ordered the Commissioner to undertake the filing of a termination of parental rights petition within 90 days and in default thereof authorized the child’s maternal grandmother to file such petition and directed that the Commissioner afford legal representation to the maternal grandmother in that proceeding. The child’s Law Guardian opposes the Commissioner’s motion, advising that the maternal grandmother "wishes to continue a loving home for the child Charise and to begin to plan for her permanently”.
The historical background for the Commissioner’s motion is as follows:
On March 30, 1987, the court on inquest found the respondent mother neglected her child Charise B. (born Jan. 17, 1980) as alleged in the petition filed by the Commissioner on February 11, 1987. The finding on a preponderance of the evidence is that the mother left the child some seven years before with the maternal grandmother without leaving any provisions for the care of the child and without informing of her whereabouts. At disposition, the Commissioner urged that the child continue to reside in the physical custody of the grandmother who pursuant to investigation by the Commissioner was found to be a proper and adequate resource. *945 Accordingly on March 30, 1987 the child was placed with the Commissioner for up to 18 months on the understanding that she reside with her grandmother who would be set up as a foster kinship home. Placement was extended for a further 12-month period pursuant to the supplemental petition filed on June 17,1988 by the Commissioner who advised that the child and grandmother have “a great relationship, there is much love between them”. By supplemental petition filed on June 16, 1989, the Commissioner moved for a second 12-month extension of placement, again acknowledging “a great relationship” between the child and grandmother, but advising that the latter’s home was not approved for foster kinship purposes within the regulations. Disqualification was premised on the fact that the grandmother was caring for six very young grandchildren in a five-bedroom house and her wish to no longer have the child welfare agency involved. The Commissioner threatened to remove the child from the grandmother, the only individual whom the child had known as a de facto parent since birth, a period of over nine years, if placement continued with the Commissioner. The Commissioner endorsed modification of disposition to placement direct with the grandmother. To assuage the threat of the Commissioner to remove the child from the grandmother because this course was mandated by “regulations”, the court continued the extension of placement for another 12 months, but transferred placement from the Commissioner to the grandmother. The Commissioner was directed to effect permanency planning for the child by having parental rights terminated so that the child may be adopted by her grandmother.
The matter appeared on the court’s calendar on October 6, 1989 for a report as to the status of termination of parental rights proceeding to be filed on the child’s behalf. The Commissioner reported continued reluctance to effect this planning goal, taking the position that by virtue of the placement being transferred to the grandmother it was the legal and financial responsibility of the latter to effect the freeing of the child for adoption and the Commissioner would no longer be bothered. Continuing its direction to the Commissioner under Family Court Act § 1055 (d) to undertake the filing of a termination of parental rights proceeding, the court adjourned the matter to January 12, 1990 and subsequently to January 29, 1990, for a report. On January 29, 1990, almost six months after the court’s initial direction that termination proceedings be instituted, the Commissioner made the instant motion to *946 vacate such directive. Prior to transfer of placement to the grandmother, the child had been in placement with the Commissioner for 2 years, 5 months and 2 days. Throughout this period there was no contact by the mother with her child.
The petitioner Commissioner argues that the subject child of this proceeding by virtue of the modification of disposition from placement with the Commissioner to placement with her maternal grandmother ceased to be a "dependent child” within the ambit of Social Services Law § 384-b (3) (a) and therefore may not be the subject of a termination of parental rights proceeding under section 384-b.[1] A "dependent child” is defined under the Social Services Law as "a child who is in the custody of, or wholly or partly maintained by an authorized agency or an institution, society or other organization of charitable, eleemosynary, correctional, or reformatory character”. (Social Services Law § 371 [7].) The Commissioner further argues that the subject child’s grandmother who is the de facto foster parent of the child may not bring a termination of parental rights proceeding in her own name in such capacity because she is not a foster parent as defined in Social Services Law § 371 (19) — " 'Foster parent’ shall mean any person with whom a child, in the care, custody or guardianship of an authorized agency, is placed for temporary or long-term care”. Having absolved himself of any responsibility to plan for, provide service to or effect the best intereste of the child Charise B. because as viewed by the Commissioner the child is beyond the pale of the Social Services Law, the Commissioner asserts that the only legal remedy provided by the State to effect permanency planning is the initiation by the maternal grandmother of an adoption proceeding, citing Domestic Relations Law § 111 (2) (a). This statutory enactment permits adoption to be finalized without the consent of a parent under analogous grounds to those set forth in the Social Services Law except for permanent neglect or severe or repeated abuse of the child by the parent. Accordingly it is inferred by the petitioner Commissioner that the grandmother left to her own initiative may adopt her granddaughter without the consent of the child’s parent, the respondent mother, based on abandonment, surrender, mental illness or mental retardation. Under the facts herein the only available ground is abandonment.
*947 What then exactly is the obligation or responsibility of the Commissioner to the child Charise under the circumstances. Guidance is obtained from the following legislative enactments: Social Services Law § 384-b (1), entitled "Statement of legislative findings and intent”, declares
"(a) The legislature hereby finds that:
"(i) it is desirable for children to grow up with a normal family life in a permanent home and that such circumstance offers the best opportunity for children to develop and thrive;
"(ii) it is generally desirable for the child to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered;
"(iii) the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home; and
"(iv) when it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child.
"(b) The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care and without being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens. The legislature further finds that provision of a timely procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays.
"It is the intent of the legislature in enacting this section to provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption.”
By its terms this statement of legislative policy is not restricted to "destitute”, "dependent”, "neglected” or "abused” children, but applies to any child in foster care. One of the main avenues by which children enter foster care is by *948 virtue of a dispositional order of placement in a Family Court Act article 10 child protective proceeding. Said article "is designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its Family Court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met” (Family Ct Act § 1011; emphasis supplied). It is clear that State intervention having as its impetus the desire to protect children from mistreatment and injury has as its ultimate goal and raison d’etre the meeting of the child’s needs.
The teaching of the aforementioned statutory declarations is that the petitioner Commissioner having initiated State action with respect to the subject child Charise B. and obtained the entry of the child into foster care pursuant to the original placement order, the subsequent orders of extension of placement and the modification of disposition from placement with the petitioner to placement with the grandmother, all indicia of State action, has an inchoate obligation while the child is in placement to effect proper meeting of the child’s needs. Indeed, the fact that the placement of the child was modified from placement with the Commissioner to placement with the grandmother at the Commissioner’s request did not effect a substitution of parties to the proceeding. The Commissioner remains the named petitioner and has an on-going obligation to protect the child and advance the fulfillment of the child’s needs in proper fashion.
Pursuant to Family Court Act § 1055 (a) the Family Court has broad discretion in deciding where to place a child determined to be abused or neglected. It permits the court to "place the child in the custody of a relative or other suitable person, or of the Commissioner of Social Services or of such other officer, board or department as may be authorized to receive children as public charges, or a duly authorized association, agency, society or in an institution suitable for the placement of a child.” Where a child was placed with a relative or other suitable person, uncertainty as to the involvement of the Commissioner of Social Services in planning for and meeting the needs of the child constituted the gravamen of a perceived "stagnant situation where the child cannot be returned to the parent for lack of a change in the status quo yet also cannot be freed for adoption because the Department of Social Services has failed to attempt to strengthen the parental relation *949 ship” (Matter of Sharon A, 79 Misc 2d 214, 215 [Fam Ct, Kings County 1974]). In 1975 the Legislature met this concern by enacting subdivisions (c) and (d) of Family Court Act § 1055. Subdivision (c) provides that in addition to or in lieu of an order of placement or extension of placement (whether such placement is with the Commissioner or relative or other suitable person) the court may make an order directing the Commissioner to undertake diligent efforts to encourage and strengthen the parental relationship when it finds such efforts will not be detrimental to the child’s best interests. Subdivision (d) in the pertinent part states: "In addition to or in lieu of an order of extension or continuation of a placement * * * the court may make an order directing a social services official * * * to institute a proceeding to legally free the child for adoption, if the court finds reasonable cause to believe that grounds therefor exist.” The petitioner Commissioner in essence argues that where a child is in "private” placement by virtue of State action (i.e., placed directly with a relative), such child is not the beneficiary of State action to terminate parental rights as a corollary of the State’s obligation to effect permanency planning for the child. This argument creates two distinct classes of children in foster care in respect of State action with differing rights to permanency planning by way of termination of parental rights and adoption regardless of the mandate to effect best interests of children in foster care. Children placed directly with the Commissioner may be freed for adoption, according to the petitioner’s thesis on the basis of abandonment, permanent neglect, mental illness or mental retardation, repeated or severe abuse, or surrender while those placed directly with a relative may advance all of the aforementioned grounds for termination of parental rights except the ground of permanent neglect or repeated or severe abuse. These latter two grounds are not set forth in the Domestic Relations Law as a basis for dispensing with parental consent. All children in the care of individuals other than parents, who are exercising parental duty and responsibility for such children by virtue of placement orders under Family Court Act § 1055, are in foster care.[2] The petitioner Commis *950 sioner would afford permanency planning by way of termination of parental rights to only those children directly placed with the Commissioner and being cared for in whole or in part by his agents or employees and as to all other children placed with relatives or individuals under State action, the Commissioner would withdraw from them the benefit of termination of parental rights as a prerequisite to freeing said children for adoption. As already noted the latter classification of children ("private” placement) would never obtain the benefit of the termination based on permanent neglect. The petitioner’s legal interpretation of the various statutory enactments by which children enter foster care and remain in foster care under Family Court Act article 10 viewed in conjunction with pertinent provisions of the Social Services Law creates a grave implication of unequal protection of the laws (see, NY Const, art I, § 11). In this regard, the court suggests that the Legislature might wish to clarify the involvement of the Commissioner and the Department of Social Services with permanency planning for all children placed in foster care under article 10 including the applicability of termination of parental rights initiated by the Commissioner on behalf of any child placed in foster care where properly indicated and advised, not restricted to those children placed directly with the Commissioner.
Indeed recent legislation indicates that the Legislature is attuning itself to the concerns expressed herein. Family Court Act § 1017 (1) (added by L 1989, ch 744, § 5) provides inter alla that where a child is placed pursuant to section 1055,
"the court shall direct the local commissioner of social services to conduct an immediate investigation to locate relatives of the child and inform them of the pendency of the proceeding and of the procedures for becoming foster parents or for seeking custody or care of the child, and determine:
"(a) whether there is a suitable person related to the child with whom such child may appropriately reside; and
"(b) whether such relative seeks approval as a foster parent pursuant to the social services law for the purposes of providing care for such child, or wishes to provide free care and custody for the child during the pendency of any orders pursuant to this article” (emphasis supplied).
This statute implies a preference that a child removed from his or her home reside with a suitable relative, if available, rather than being placed with unrelated strangers in the *951 foster care system administered by the Commissioner. Such relative, if suitable, may provide care for the child as an approved kinship foster parent under the aegis of the Commissioner, i.e., the child is remanded or placed with the Commissioner with a direction that the child reside with such relative. Under this removal, the Commissioner is providing care for the child either in whole or in part, as his ward. Alternatively if such relative is desirous of providing free care and custody for the child, i.e., does not need the added financial support and services of the Commissioner afforded foster kinship parents, then the child may be placed directly with such relative. Regarding a relative of the child suitable as a foster parent, the Legislature delineated this approach in subdivision (2) of Family Court Act § 1017 which states:
"The court shall, upon receipt of the report of the investigation ordered pursuant to subdivision one of this section:
"(a) where the court determines that the child may reside with a suitable person related to such child, either:
"(i) place the child with such relative and conduct such other and further investigations as the court deems necessary; or
"(ii) remand or place the child with the commissioner of social services and direct such commissioner to have the child reside with such relative and further direct such commissioner pursuant to regulations of the department of social services, to perform an investigation of the home of such relative within twenty-four hours and thereafter approve such relative, if qualified, as a foster parent. If such home is found to be unqualified for approval, the commissioner shall report such fact to the court forthwith.”
The statute is silent as to the parameters of the court’s discretion in placing the child where there is a suitable relative, but such relative’s house is unqualified for approval as a foster kinship home. Upon initial impression it might be argued that if the home is unqualified for approval, the child should not reside in such home, but should be placed with the Commissioner without any direction that the child reside with such relative.
The petitioner Commissioner has taken the position in this matter that the grandmother’s home having not been approved, the placement must be direct with the grandmother and that this disposition is mandated by applicable regulation of the Department of Social Services. This position explicitly *952 acknowledges the suitability of the maternal grandmother as a foster parent for her grandchild apart from the fact that the grandmother’s home was not approved. The applicable regulation follows: "Court ordered placement of children. Where a court order exists pursuant to Social Services Law * * * Article * * * 10 of the Family Court Act which gives the local commissioner of social services care and custody or custody and guardianship of the child and foster care placement is ordered, the placement of the child must always be in a licensed, certified or approved foster home or other facility authorized by the department to provide foster care” (18 NYCRR 431.6; emphasis supplied). If the lack of approval of the otherwise suitable relative emanates from a circumstance unrelated to the ability of the relative to render appropriate care for the child, then such circumstance should be of no avail to the Commissioner in requesting removal of the child from the physical custody of that relative. As an example, the court notes that if a suitable relative refuses to cooperate with the Commissioner in obtaining approval of the home, but the home is otherwise adequate to meet the needs of the child and the relative is otherwise a responsible caretaker and does not need the funding from the Department of Social Services that is available to approved foster kinship homes, then such lack of approval is immaterial to meeting the needs of the child. The aforementioned regulation properly established could be read into evidence in any legal proceeding and would have the force and effect of law when reasonable and not in conflict with other laws (NY Const, art IV, § 8; Executive Law § 102; 2 NY Jur 2d, Administrative Law, § 99; see, Park Place — Dodge Corp. v Collins, 75 Misc 2d 25, 27, affd 43 AD2d 910 [1st Dept 1974]).[3] To reiterate, the subject child was in placement direct with the Commissioner for 2 years, 5 months and 2 days prior to modification of placement; at no time during this period did the Commissioner ascertain if the permanency planning needs of the child could be met by adoption by her related foster parent; there has been no contact between the respondent mother and child for such period; the foster parent, the maternal grandmother, has at all times been considered a suitable relative by the Commissioner; the modification of disposition to placement direct with the grandmother was at the Commissioner’s insistence based upon the Commissioner’s invocation of the aforementioned regulation.
*953 Under the circumstances outlined above and in light of the specific grant of placement options available to the court under Family Court Act §§ 1017 and 1055 and in order to effectuate the meeting of the subject child’s needs (Family Ct Act § 1011), the court construes the applicable statutory enactments in a manner designed to avoid disparate treatment in terms of permanency planning and meeting the needs of the children placed directly with the Commissioner or directly with a relative. Accordingly the regulation of the Department of Social Services (18 NYCRR 431.6) notwithstanding, the court denies the motion of the petitioner Commissioner for an order vacating this court’s prior order of October 6, 1989 directing the Commissioner to file a termination of parental rights proceeding on behalf of the child Charise. In order to more properly effectuate this directive and remove any apprehension by the Commissioner that he may not do so within the terms of the Social Services Law, the court sua sponte as parens patriae to the child modifies the dispositional order of August 2, 1989 nunc pro tune to direct that the child is placed with the Commissioner of Social Services with a further direction to the Commissioner that the child reside with her maternal grandmother (Family Ct Act § 1017). The aforementioned regulation under the circumstances of this case is simply not reasonable and conflicts with the overriding mandate that the child’s needs be met. Also if such regulation is deemed to apply in every case where a child is placed directly with the Commissioner regardless of any other circumstance relevant to the needs of the child, form is exalted over substance and the spectre of unequal protection of the law arises. Termination of parental rights proceeding is to be initiated by the Commissioner on behalf of Charise forthwith and failure to do so may be viewed as contempt (see, Judiciary Law § 753).

. Clearly the subject child is not a "destitute child” as defined in Social Services Law § 371 (3).

. The dictionary definition of "foster” is "affording, receiving, or sharing nourishment, nurture, or sustenance, though not related by blood, or figuratively, by ties of nature, citizenship or the like. Hence foster mother or father, foster parent, a woman or man who has performed the duties of a parent to the child of another” (Webster’s New Collegiate Dictionary [2d ed 1953]).

. It is assumed that the regulation cited herein relates to the internal management of the Department of Social Services.