OPINION OF THE COURT
 

 Bellacosa, J.
 

 The subject of this Family Court proceeding is a child, Dale P., who was abandoned after birth by his mother and taken into the care of a friend, Mary H. The dispositive legal question turns on whether the now seven-year-old child should be given the opportunity for a best interests permanency placement under the auspices of the New York City Commissioner of Social Services, as decided by Family Court. Although the youngster is not a statutory foster child, we agree with the prior courts and conclude that the interstitial and individualized justice effected in this statutory construction case does not transgress technical foster care placement prerequisites.
 

 We agree with Family Court’s decision to impose on the New York City Social Services Commissioner the obligation in this case to initiate termination proceedings for Dale P.’s benefit, pursuant to the complementary features of Family Court Act § 1055 (d) and Social Services Law § 384-b. However, we modify the order, as affirmed by the Appellate Division, to strike the alternative relief directing the Commissioner to provide legal services to Mary H., if the Commissioner failed to comply in the first instance. On this record, the conditional relief presents an issue unnecessary to resolve in light of our disposition of the threshold issue.
 

 L
 

 Dale P. was born in 1987 to Nancy P., a cocaine addict, and an unknown father. Between January 17 and February 7, 1988, Nancy P. abandoned Dale P. Mary H. voluntarily undertook the care and custody of the child. The biological mother repeatedly defaulted in answering court petitions. On unbroken showings of neglect and abuse of the child, Family Court made a finding of neglect on April 5, 1988 and judicially continued the child in Mary H.’s care and custody for a period of 18 months, pursuant to Family Court Act § 1055 with the approval of the Commissioner. Mary H. filed a subsequent petition in which she alleged that Nancy P. had not visited or called about Dale P. and was unable to care for him, and that
 
 *76
 
 Mary H. was continuing to nurture the child. On July 28, 1989, Family Court, again with the Commissioner’s acquiescence, extended the child’s placement with Mary H. for one year as of October 5,1989.
 

 Approximately one year later, appellant Commissioner filed a petition, pursuant to article 10 of the Family Court Act, requesting another one-year extension of Dale P.’s placement with Mary H. The Commissioner represented, based on her office’s investigation, that Mary H. was providing good care, that the child was "achieving developmental progress,” and that Mary H. wished to adopt the child. The petition added that Dale P.’s mother, a known drug abuser, had not cooperated with child welfare authorities and that her whereabouts were unknown. Family Court granted the Commissioner’s petition in an order dated October 19, 1990 that extended for an additional year Dale P.’s placement with Mary H., effective October 5, 1990. That order is not before us for review.
 

 The court on its own motion issued a second order, on the same date, directing the Commissioner to institute a termination of parental rights proceeding. The Commissioner moved to vacate this second order, arguing that because Dale P. was not in the "official” care and custody of the Commissioner, the court was not authorized to direct the Commissioner in this respect. Family Court then modified the second order, ruling that if the Commissioner failed to bring a termination proceeding within 30 days, the "foster mother,” Mary H., was authorized to bring an adoption proceeding, in which event the Commissioner was to afford her legal representation. The Commissioner appealed both prongs of this modified second order. The Appellate Division affirmed and this Court granted leave to appeal to review the affirmance of that second order.
 

 The threshold and dispositive issue in the circumstances of this case is whether Family Court may direct the New York City Commissioner of Social Services to commence a proceeding to terminate parental rights of a child previously directly placed by Family Court with a nonrelative custodian under Family Court Act § 1055 and Social Services Law § 384-b (3) (b) and (4) (b).
 

 IL
 

 Indisputably, Dale P.’s placement with Mary H. is in the child’s best interest. The goal of permanency planning for children in foster or direct custodial care is their best inter
 
 *77
 
 ests. That is the essence of this case. Dale P. was earlier abandoned by his biological mother and remains in that legal status. Mary H. has filled the needed interim custodial role since early 1988. The record, developed by the Commissioner’s investigation, confirms that Mary H. is providing capable and proper care as the only parent the child has known.
 

 The legal question evolves out of a tension in authority governing the fragile world of alternative care and custody of children. The Commissioner is legitimately concerned about regularized and statutorily authorized process. She argues that Dale P. has not been properly processed into the official foster care system and is, therefore, not correctly classified to trigger the Family Court’s authority to direct the Commissioner to act on a parental termination step, leading eventually to permanent placement with Mary H. On the other hand, the Law Guardian, on Dale P.’s behalf, urges that the child is entitled to official assistance in progressing promptly toward adoption by Mary H., since he has been in her caring home through "direct placement” under the continuing joint auspices of the Commissioner and Family Court. The guardian suggests that the Commissioner is in the best position to facilitate and effectuate the ultimate goal, despite the fact that Dale P. is not a statutory foster child, and that Family Court should have the power to shape the Commissioner’s assistance and action in this regard and in these circumstances.
 

 We agree with the courts below that the technical foster care processing predicate was not the exclusive channel where, as here, officially authorized direct placement by the Family Court and the Commissioner initially and fortunately rescued the infant by maintaining him in a temporary, caring, direct, custodial home. The judicial action in this case should effect no disruption or alteration of the customary and delicately balanced operation of the foster care system with respect to its search and struggle for permanency planning of children generally and systemically.
 

 While the State’s involvement in the parent-child relationship could not be avoided in this case, an overarching consideration always obtains for children to be returned to biological parents, if at all possible and responsible
 
 (Matter of Michael B.,
 
 80 NY2d 299). When that cannot be done, the emphasis shifts to securing permanent, stable solutions and settings (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1055, at 448).
 

 
 *78
 
 Family Court ruled in this case that a proceeding to legally free a child for adoption should not be dependent on "the accidental nature of the placement, i.e., with the Commissioner [in foster care], or with a related resource, or with an unrelated resource [direct placement]”
 
 (Matter of Dale R,
 
 150 Misc 2d 366, 369). That general nostrum cannot, of course, displace statutory specifications and authority. Yet, when applied in context, the rubric reflects an intelligent discretion allowing the Family Court to induce the Commissioner to supply services to effectuate termination of birth parents’ parental rights, where warranted, and thus to set the stage for the creation of a fresh start, a new parent-child relationship through adoption.
 

 IIL
 

 Nevertheless, the Commissioner urges that Dale P.’s permanency planning can be effected through a statutory scheme which does not involve the Commissioner. She notes that because Dale P. is in direct placement with Mary H., he is thus technically not a proper member of the Commissioner’s foster care roster for purposes of the Family Court’s intervention. The Commissioner contends, moreover, that she is not authorized by Social Services Law § 384-b to commence a termination proceeding, since that authority extends only to children in foster ranks which is the sole statutory predicate for her to take that drastic action. Section 384-b (3) (b) of the Social Services Law provides:
 

 "A proceeding under this section may be originated
 
 by an authorized agency
 
 or by a foster parent authorized to do so pursuant to section three hundred ninety-two of this chapter or to section one thousand fifty-five of the family court act” (Social Services Law § 384-b [3] [b] [emphasis added]).
 

 The Commissioner contends that because Dale P. was never placed in her custody, she is not authorized under the statute to bring a termination proceeding and that Family Court cannot, in these circumstances, order the Commissioner to do so.
 

 We disagree. This record supports the view that Dale P. is entitled to the remedy directed by the Family Court to be implemented by the Commissioner. No valid reason is pre
 
 *79
 
 sented on this record to require Family Court to add an unnecessary, dilatory step by formally placing the abandoned child, Dale P., into the foster care system first as the justification toward achieving the concededly desirable ultimate objective of permanent placement in this child’s best interests. Technically removing a child from a direct placement and placing the youngster with the Commissioner to expedite certification as a de jure foster caregiver may be the preferred progression in most situations to preserve the general objectives of the pertinent statutes
 
 (see, Matter of Charise B.,
 
 146 Misc 2d 943;
 
 Matter of Coop,
 
 140 Misc 2d 951). This approach is also important so as to pay heed to all appropriate procedural safeguards and protections of the interests and rights of natural, biological parents in any termination proceeding. In this case, however, that transferral would be unnecessarily circuitous, the merest formality, and contrary to the best interests of Dale P., who was properly found to be an abandoned, dependent child within the meaning of Social Services Law § 371 (2), (7) and § 384-b (4) (b). That is a key, distinctive feature and predicate upon which the analysis and official actions in this case proceeded.
 

 Appellant Commissioner is, however, justifiably cautious because a child who is directly placed by Family Court does not automatically qualify for special Federal foster care funds, since such placements are not into State licensed facilities
 
 (see,
 
 42 USC § 671 [a] [10]; § 672 [b], [c]; 45 CFR part 1355;
 
 see also, Matter of Daniel T. C,
 
 141 Misc 2d 50). Also, the Commissioner’s authority over such directly placed children is more circumscribed, since the Commissioner cannot dictate licensing requirements for quality of care provided to such children
 
 (see, Matter of Hasani B.,
 
 195 AD2d 404;
 
 see also,
 
 18 NYCRR part 444). Further, the Commissioner is concerned that the lack of the usual nexus between the child and foster care network may impede the supervisory responsibility of the Commissioner to children in her care and custody. These responsibilities buttress the legislative goal of Social Services Law § 384-b that prior to termination proceedings, "the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home” (Social Services Law § 384-b [1] [a] [iii]). Despite those generalized concerns, they are not pertinent or dispositive in the context of this case. We are satisfied that the precise precedential principle and analysis of this statutory construction case will allow for adequate and appropriate consideration of
 
 *80
 
 the Commissioner’s concerns and those of biological parents who in appropriate cases may be affected.
 

 Moreover, Social Services Law § 384-b (1) (b) reflects greater flexibility than the Commissioner’s arguments appear to acknowledge:
 

 "The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care without being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens. The legislature further finds that provision of a timely procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays.” (Social Services Law § 384-b [1] [b].)
 

 Against such expressed concerns and practical observations, the argument cannot be sustained that stricter official supervision and expenditure of relatively more public tax dollars for the care of a child placed in foster care creates a virtually exclusive route and progression towards permanency placement. No convincing reasons are advanced to bar a directly placed child, as in this case, from helpful official assistance along the way. Like the Appellate Division, we consider that "our determination is narrowly directed to the Commissioner’s argument that Dale P. was not a foster child”
 
 (Matter of Dale P.,
 
 189 AD2d 325, 330). We also agree with the Appellate Division that "[t]he Commissioner’s contention that Dale P. falls within gaps in the statutory scheme is contrary to the legislative intent expressed in Social Services Law § 384-b (1)”
 
 (id.,
 
 at 330). The Family Court’s rescue of this child from that "gap” or statutory interstice is not only correct, it is that court’s preeminent and transcendent
 
 raison d’etre.
 

 As part of its continuing duties to attend to the care of this abandoned child, and to extend placement, the Family Court properly ordered the Commissioner to file for termination of parental rights on behalf of Dale P., a child directly placed with a "suitable person” — Mary H. The Family Court is empowered to guard the welfare of the child and, as the Law Guardian has demonstrated, Family Court, in this instance, is the primary care-director, charged with ongoing responsibility
 
 *81
 
 for the child (Social Services Law § 383 [2] [legal custody remains with agency placing child];
 
 see also, Matter of Spence Chapin Adoption Serv. v Polk,
 
 29 NY2d 196, 205). Undertaking to insure the welfare of this child, Family Court is authorized by law to place the abandoned Dale P. with Mary H., a competent custodian for the good of the child
 
 (see,
 
 Social Services Law § 374 [1]; Family Ct Act § 1052 [a] [iii]; § 1055 [a]), and to order the Commissioner to take further actions toward permanent placement.
 

 IV.
 

 Since the Commissioner did not initiate on her own the termination of parental rights, the Family Court also properly relied on Family Court Act § 1055 (d) as a complementary, reinforcing source of its power to direct the Commissioner to proceed with the predicate step under Social Services Law § 384-b (4) (b) toward a permanent placement.
 

 Family Court Act § 1055 (d) sets forth the dispositional options following extensions of placements. Directing the termination of parental rights as a predicate to adoption is an available option for all neglected and abused children who have been placed in nonparental homes. Accordingly, the Family Court was authorized to direct the termination of parental rights when, as here, (1) the child falls within the ambit of Family Court Act § 1055 (d) and (2) the court determines that there are grounds to terminate parental rights on the basis of abandonment.
 

 The intertwined statutory question in this framework is whether, for purposes of Family Court Act § 1055 (d), there is any reason to distinguish a foster child who is not placed by or with a social services agency from one directly placed by the court in a home not certified under applicable State and Federal law. We agree with the reasoning of the Appellate Division and Family Court that no valid reason to support such a distinction is present in these circumstances. If the court has the power to place the child with Mary H. under Family Court Act § 1055 (a) and to continue such placement pursuant to subdivision (b), with the participation and acquiescence of the Commissioner, the court has the power to direct official initiation of proceedings that would ultimately free the child for adoption by such a qualified and proper custodian with all due procedural safeguards. Without such power, the courts would be unnecessarily restricted to keeping children
 
 *82
 
 in the very foster care limbo sought to be eliminated or remediated by passage of Family Court Act § 1055 (d)
 
 (see also,
 
 Social Services Law § 384-b [1] [b]). We conclude that Family Court’s direction to the Commissioner to commence a termination of parental rights proceeding on behalf of the abandoned child, Dale P., is authorized by the complementary aspects of the pertinent statutes and is also supported by the particular circumstances developed in this record. The rulings of Family Court and the Appellate Division in this threshold respect were thus statutorily justified and ought to be sustained.
 

 V.
 

 The conditional portion of the Family Court order under review, as affirmed by the Appellate Division, dealing with provision of legal services to Mary H. if the Commissioner fails to initiate termination proceedings as directed by the Family Court, is unnecessary to resolve in this case. When the Commissioner sought vacatur of the portion of the Family Court’s direction, which we sustain, Family Court found it necessary to provide a fall-back alternative remedy that if after 30 days the Commissioner did not act, she should provide legal representation to Mary H. That hypothesis need not arise at all in this case since the primary termination proceeding relief ordered by Family Court, as discussed and decided, is a justifiable and complete remedy to set the stage for Mary H.’s adoption efforts. The Commissioner made no record of any cognizable potential conflict of interest or authority necessitating or justifying the grant of this conditional, fiscally significant relief. We have no occasion or reason to address the power of the Family Court to add that feature to its ruling in this case.
 

 Accordingly, the order of the Appellate Division should be modified to strike that portion as indicated in this opinion and otherwise affirmed, with costs to the respondent against appellant Commissioner.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to respondent.