OPINION OF THE COURT
Lee H. Elkins, J.
*364 The petitioning agency, Angel Guardian, doing business as Mercy First, brought the instant petition to declare Perry (date of birth Jan. 18, 1995), Anthony (date of birth Feb. 5, 1996) and Trevon (date of birth Mar. 5, 1997) C. abandoned, within the meaning of Social Services Law § 384-b (4) (b). At inquest, the children’s maternal grandmother testified that the respondent mother had no contact with the children since she dropped the children off at the grandmother’s home on April 18, 2003, saying that she had to do laundry. At that time, the children were in the legal custody of the respondent mother, having been returned to her from foster care with their grandmother, by order of the court on March 3, 2003. (NN 24506-8/02.) The children entered foster care on May 5, 2003 and the agency filed this termination petition on October 23, 2003.
The original underlying neglect proceeding resulted in the children being remanded to the care of the Commissioner of the Administration for Children’s Services (ACS) on October 31, 2002. The original petition alleged that the mother left the children with their maternal grandmother and disappeared. The children were remanded and remained in the home of the maternal grandmother. The respondent mother appeared before the Family Court on January 14, 2003. The court ordered preventive services and liberal visits between the children and the respondent mother in the grandmother’s home. The children remained in the care of the grandmother throughout the proceeding. On February 11, 2003 the neglect case was adjourned in contemplation of dismissal (Family Ct Act § 1039) on condition that the respondent cooperate with ACS supervision, attend and produce the children for individual counseling, attend parenting skills classes and not use corporal punishment. The children were released to their mother.
On May 5, 2003, ACS filed a new petition alleging that the respondent mother violated the terms of the adjournment in contemplation of dismissal, by failing to attend counseling or parenting skills classes. The violation petition also alleged that the respondent mother left the subject children with the maternal grandmother on April 18, 2003 without informing the grandmother that she was leaving. The mother was not seen again until after the grandmother filed a missing person report with the police department. Two weeks after the respondent mother left the children with the grandmother, the police found the mother at her own home. However, the mother spoke to a caseworker from ACS on April 28, 2003. ACS substituted a new neglect petition (NN 7740-2/03) for the violation petition. The *365 children remained with the grandmother and the mother continued to have no contact with them. Upon an inquest on the new article 10 petition, the court made a finding of abandonment. (Family Ct Act § 1012 [F] [ii].) The children were placed into foster care with the Commissioner to reside with their maternal grandmother. The effective date of placement was May 5, 2003, the date they reentered foster care on remand.
On October 23, 2003, the agency filed the current petition. Again, the court held an inquest. The grandmother testified that the respondent mother had no contact with the children for the six-month period immediately preceding the date when this petition was filed. There is no evidence to contradict the grandmother’s testimony. The agency case record in evidence shows that the respondent mother had no contact with the petitioner agency during the same period. The issue presented is whether the order discharging the children to their mother on March 3, 2003 precludes a cause of action for abandonment filed less than six months after the children reentered foster care on May 5, 2003. Stated otherwise, the issue is whether a child must be in foster care for the entire period of six months prior to the date the abandonment petition is filed, even though the evidence proves that the parent has had no contact with the child for the statutory six-month period.
The petitioner, citing Matter of Dale P. (84 NY2d 72 [1994]), argues that there need not be a placement nor involvement of a foster care agency for an abandonment cause of action to arise under Social Services Law § 384-b. The petitioner finds authority for this argument in the language of Social Services Law § 384-b (3) (b), which permits “a relative with care and custody of the child” to file a termination of parental rights petition. The law guardian points out that the child in Dale P was in foster care for the entire abandonment period, having been directly placed by the Family Court with a suitable person. (Family Ct Act § 1055.)
The petitioner’s argument misconstrues the scope of the statute and misreads the holding of the Courts in Dale P In order for a child to be subject to an action to commit custody and guardianship under Social Services Law § 384-b, the child must meet the definition of a “destitute or dependent child.” (Social Services Law § 384-b [3] [a].) Social Services Law § 371 (7) *366 defines a dependent child[1] as “a child who is in the custody of, or wholly or partly maintained by an authorized agency or an institution, society or other organization of charitable, eleemosynary, correctional, or reformatory character.” The Courts in Dale P. found that, for purposes of direct placement of a child with a suitable person by the Family Court under Family Court Act § 1055, the court itself could be considered an “authorized agency,”[2] (see, Matter of Dale P., 189 AD2d 325, 330 [2d Dept 1993], mod 84 NY2d 72 [1994]; and see, Matter of Dale P, supra, 84 NY2d at 80-81) and the child a foster child, subject to the provisions of Social Services Law § 384-b. The Court of Appeals in Dale P. held that the statute authorizes the court to direct the Commissioner to file a termination of parental rights petition where it appears that such child has been abandoned within the meaning of Social Services Law § 384-b. (Family Ct Act § 1055 [d].) The statute also authorizes the court to permit the foster parent in whose home the child resides to institute such a proceeding in the event of the Commissioner’s failure to comply with the court’s order. (Family Ct Act § 1055 [d].) Reading the statute as a whole, there is no basis to conclude that a relative having custody of a child, who is not in foster care, may bring an action under Social Services Law § 384-b.[3]
It is clear from Dale P. that a child must be in foster care in order for a cause of action to arise under Social Services Law § 384-b. Certainly, the child must be in foster care at the time the Commissioner commences any such action. As noted previously, Social Services Law § 384-b only applies to children in foster care. At the time the petitioner commenced this action, the subject children were in foster care, having been placed with the petitioner agency. Therefore, there is no question that the Commissioner, or in this instance an authorized agency, has standing to bring an action to commit the guardianship and custody of the children to the agency. However, as the children were not in foster care for the entire six-month period of the al *367 leged abandonment, the issue remains whether the statute permits the Commissioner to bring a petition for abandonment, even though the abandonment period commenced before the children entered foster care.
Social Services Law § 384-b (4) (b) defines the relevant period for proof of abandonment as “the period of six months immediately prior to the date on which the petition is filed in the court.” There is nothing in the statute which explicitly requires that the child have been in foster care for the entire six-month period. In contrast, the definition of permanent neglect (Social Services Law § 384-b [7] [a]) requires proof that the subject child was “in the care of an authorized agency” for a period of more than one year, during which the child’s parent substantially and continuously or repeatedly failed to maintain contact with or plan for the future of the child. The definition of abandonment contains no such requirement. Rather, abandonment simply requires proof that the parent failed to visit the child and to communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency (Social Services Law§ 384-b [5] [a]). This definition parallels the definition of abandonment in Domestic Relations Law § 111 (2) (a), which allows the court, in a private adoption, to dispense with the consent of a parent who has manifested an intent to forego parental rights and obligations by “failure for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so.” (Domestic Relations Law § 111 [2] [a] [emphasis added].) The same facts which give rise to a cause of action for abandonment under Social Services Law § 384-b also permit the court to dispense with parental consent in a private action for adoption. The same preference for parental rights and constitutional limitations on the deprivation or termination of parental rights apply equally under either statute. (Social Services Law § 384-b [1] [a] [iii]; and see, e.g. Matter of Corey L. v Martin L., 45 NY2d 383 [1978].) Consequently, the cause of action for abandonment arises after the parent has evinced an intent to forego his or her parental rights and obligations by failing to communicate with the child for a period of six months, whether the child is in the care of an authorized agency or in the care of an individual. The significance of the foster care placement is that it permits an authorized agency to file the action for abandonment under Social Services Law § 384-b.
The court does not find that any legislative purpose is served by requiring the authorized agency to defer bringing an action *368 for abandonment until the child has been in foster care for six months, under circumstances where the abandonment arises earlier.[4] Placing the child into foster care to permit the Commissioner to commence the termination proceeding may serve to provide greater protection to the interests of the parent and to the parent-child relationship. The general objectives of the pertinent statutes, as the Court of Appeals recognized in Dale E, are best achieved by placing children with the Commissioner to expedite certification of a de jure foster caregiver. “This approach is also important so as to pay heed to all appropriate procedural safeguards and protections of the interests and rights of natural, biological parents in any termination proceeding.” (Matter of Dale P., 84 NY2d, supra at 79.) For example, the agency may be expected to verify that the parents have not made efforts to maintain contact with the child, which have been intentionally thwarted by the child’s custodian. Once the abandonment is clearly and convincingly established, however, the child’s interests are not served by creating unnecessary and technical barriers to permanency. It is the policy of the State, as expressed by the Legislature in the preamble to Social Services Law § 384-b, to provide “a timely procedure for the termination, in appropriate cases, of the rights of the birth parents,” so as to reduce the impermanency of children in foster care. (Social Services Law § 384-b [1] [b].)
This result was implicitly approved by the Appellate Division, Third Department, in Matter of Erika G. (289 AD2d 803 [3d Dept 2001]). There, the appellate court upheld a finding that the respondent father abandoned his children by moving out of state in September 1999, leaving the children in the care of their mother, and having no contact with them before March 2000, when the authorized agency filed the petition under Social Services Law § 384-b. The children, who had previously been in foster care in 1998, were returned to foster care by court order in November 1999. The six-month period of abandonment included two months when the children were in the custody of their mother,[5] and four months when the children were in foster care. The precise issues argued here were not addressed by the Court in the reported decision.
*369 Therefore, the court finds that the subject children were abandoned within the meaning of Social Services Law § 384-b (4) (b) and (5) (a), in that the respondent mother failed for the period of six months immediately preceding the filing of this petition by the authorized agency, to visit or to communicate with the children, while in the care of their grandmother both before and after the children reentered foster care.

. The petitioner does not argue that the child is destitute within the meaning of Social Services Law § 371 (3). A destitute child is one who, through no neglect on the part of the child’s parent, guardian, or custodian, is destitute or homeless or a runaway.

. Social Services Law § 371 (10) (b) provides in part that an authorized agency includes “[a]ny court... of this state authorized by law to place . . . children.”

. The relative having custody or guardianship might bring an action for adoption under the Domestic Relations Law. (See, Domestic Relations Law § 111.)

. A caveat is that under the Social Services Law, the abandonment must have continued uninterrupted for the period of six months immediately preceding the agency filing the petition in court. (Social Services Law § 384-b [4] W.)

. The mother surrendered her parental rights in February 2000.