Matter of Arianna K. (Maximus L.) (2020 NY Slip Op 03436)





Matter of Arianna K. (Maximus L.)


2020 NY Slip Op 03436


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

528001

[*1]In the Matter of Arianna K., Alleged to be a Permanently Neglected Child. Fulton County Department of Social Services, Respondent; Maximus L., Appellant. (And Two Other Related Proceedings.)

Calendar Date: May 19, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
Fulton County Department of Social Services, Johnstown (Bryan E. Taylor of counsel), for respondent.
Karen R. Crandall, Schenectady, attorney for the children.



Lynch, J.P.
Appeal from an order of the Family Court of Fulton County (Skoda, J.), entered November 16, 2018, which granted petitioner's applications, in three proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.
Respondent is the father of three children — a son and two daughters (born in 2011, 2012 and 2015, respectively). In 2015, petitioner commenced neglect proceedings against respondent, alleging, among other things, that the unsafe and unsanitary conditions in the home placed the children at imminent risk of harm to their physical, emotional or mental welfare (Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292 [2017]).[FN1] Following a fact-finding hearing, the children were temporarily placed in the care and custody of petitioner (id. at 1293). Thereafter, at the conclusion of a dispositional hearing, Family Court continued the children's placement with petitioner (id.). Respondent appealed, and we affirmed (id. at 1294-1298).
In September 2017, petitioner commenced the three instant permanent neglect proceedings seeking to terminate respondent's parental rights with respect to each child. Following a fact-finding hearing, Family Court found that respondent permanently neglected the children. Specifically, the court found that petitioner provided ample services to strengthen the relationship between respondent and the children but, despite such services, respondent failed to appropriately plan for their future. After a dispositional hearing, the court terminated respondent's parental rights and freed the children for adoption. Respondent appeals.
We affirm. Petitioner established by clear and convincing evidence that respondent permanently neglected the children. "A permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Ronaldo D. [Jose C.], 177 AD3d 1217, 1218 [2019] [internal quotation marks and citations omitted], lv denied ___ NY3d ___ [June 9, 2020]; see Social Services Law § 384-b [7] [a]). "Where, as here, petitioner seeks to terminate parental rights on the basis of permanent neglect, it must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the children" (Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1472 [2017] [internal quotation marks and citations omitted]; see Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897 [2017], lv denied 30 NY3d 905 [2017]). "This requires that [petitioner] make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child[ren's] progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (Matter of Isabella H. [Richard I.], 174 AD3d 977, 978 [2019] [internal quotation marks and citations omitted]; see Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1178 [2017]).
At the fact-finding hearing, a caseworker for petitioner testified that the children were initially removed from respondent's care in 2015 — because of poor home conditions and lack of medical care, supervision and food — and have remained under petitioner's care since that time. The caseworker further testified that petitioner provided respondent with service plan reviews every six months, and that respondent was also provided with the Intensive After Parenting Program (hereinafter IAPP), which was "above and beyond" what petitioner routinely provides. IAPP involves a clinician and a caseworker visiting one or two times per week and also provides weekly or biweekly home inspections, transportation, budgeting tips and counseling. The caseworker testified that respondent's visitation with the children was weekly, which he attended. She regularly had to instruct him as to appropriate activities to do with the children and positive hygienic behavior at his pre-visit conferences, post-visit conferences and the service plan reviews. The caseworker referred respondent and the children's mother to domestic violence counseling, but the couple had declined to attend. Domestic violence remained a concern for the caseworker. The caseworker also referred respondent for individualized mental health services, which he regularly attended but has not shown any progress. Further, according to the caseworker, after two years, the IAPP was ended due to respondent's failure to progress. Although respondent failed to improve and meaningfully engage in services, we find that petitioner met its threshold burden to establish that it provided appropriate services and made diligent efforts to reunite respondent with the children (see Matter of Paige J. [Jeffrey K.], 155 AD3d at 1473; Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1004 [2017]).
Petitioner also demonstrated by clear and convincing evidence that respondent failed to meaningfully plan for the children's future. The plan for the children "must be realistic and feasible," as good faith alone is insufficient (Matter of Dawn M. [Michael M.], 174 AD3d 972, 974 [2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 907 [2020]; Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1172-1173 [2018]). According to the caseworker, when she visited respondent's home, she observed that the children's mother — who had surrendered her parental rights to the children in March 2017 — was still living with respondent. The caseworker further testified that, besides minor improvements to the home, respondent had not taken meaningful steps or made substantial plans for the children to return to his care and had not rectified the behavior causing the initial removal. Importantly, the caseworker testified that respondent does not think that the children suffer from trauma-related injuries as a result of his parenting, but believes that the children's trauma is the result of petitioner's caseworkers and the foster parents brain-washing the children.
A program coordinator of IAPP services testified that from 2012 until 2014 and from 2015 until 2017, she assisted respondent with managing household duties, parenting support and addressing his domestic violence concerns and financial issues. Although respondent understood the lessons and training, he failed to put those lessons into action and did not recognize his parenting deficiencies, in part based on his belief that the children were in agency care due to their misbehavior. As to visitation, an IAPP clinical case manager testified that, typically, respondent would have no plan for the visit, although he would provide food for the children. The clinical case manager further testified that there was "minimal" interaction between respondent and the children during visits and that the items that respondent brought to interact with the children were not age appropriate. The clinician testified that she observed during visitations that respondent had difficulty engaging with the children at an appropriate level for their development. The clinician further testified that respondent has not progressed to unsupervised visits because he has not improved his behavior. According to the clinician, neither respondent's visitation conduct nor his relationship with the children had improved despite almost two years of service plan reviews and thorough counseling. Regarding the son, the clinician testified that he had not attended any visits with respondent within the last month and a half due to significant anxiety leading up to the visits, which caused him to engage in self-harm. After the visits that he did attend, the son seemed very anxious and overwhelmed, and he told the clinician that "he can't get [respondent] out of his head, he's scared of him, he thinks [respondent is] going to hurt him."
A psychologist hired by petitioner testified that she performed an initial psychological evaluation on respondent in 2013 and concluded that he had a narcissistic personality disorder, which inhibited his ability to recognize the needs of others, including the children. The psychologist further testified that in 2017 respondent was referred to her for a re-evaluation, at which time she interviewed him for about 2 hours and 15 minutes. In conducting the second evaluation, she reviewed, among other things, petitioner's notes, notes from several of respondent's counselors and her 2013 evaluation. Based on this review, the psychologist concluded that respondent suffered from antisocial personality disorder, which causes "a pervasive pattern of lying" and ultimately contributes to his inability to recognize his own weaknesses. The psychologist further testified that the son has expressed symptoms of trauma in the form of acute anxiety and stress and that the son's anxiety about respondent compels the son to hurt himself. The psychologist concluded that respondent is incapable of utilizing the parenting lessons that petitioner provided him to successfully plan for the children because his psychological situation is such that he cannot recognize his children's needs or put them before his own.
Contrary to respondent's contention, Family Court properly relied on the evaluation of the psychologist, which was written after consideration of petitioner's notes, notes from several of respondent's counselors, a prior 2013 evaluation and a two-hour interview of respondent. We are satisfied that this record, as a whole, shows that respondent failed to take the necessary steps to adequately address the issues that led to the children's removal and failed to make a realistic plan for the return of the children despite the extensive services provided to him (see Matter of Jahvani Z. [Thomas V.—Mariah Z.], 168 AD3d 1146, 1150 [2019], lv denied 33 NY3d 902 [2019]; Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1508 [2018], lv denied 32 NY3d 914 [2019]). In our view, Family Court's determination that respondent has permanently neglected his children is supported by a sound and substantial evidence in the record (see Matter of Jessica U. [Stephanie U.], 152 AD3d at 1004). Finally, viewing the record as a whole and according the appropriate deference to the court's factual assessments and choice among dispositional alternatives, we find its determination to terminate respondent's parental rights and free the children for adoption was in their best interests (see Matter of Bayley W. [Patrick K.], 146 AD3d 1097, 1101 [2017], lv denied 29 NY3d 907 [2017]).
Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The neglect petitions also included allegations that the father neglected three other children for whom he was legally responsible, but they are not the subject of this appeal.