Matter of Frank Q. (Laurie R.) (2022 NY Slip Op 02843)

Matter of Frank Q. (Laurie R.)

2022 NY Slip Op 02843

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

532759
[*1]In the Matter of Frank Q., Alleged to be a Permanently Neglected Child. Delaware County Department of Social Services, Appellant; Laurie R., Respondent.

Calendar Date:March 23, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Amy Merklen, County Attorney, Delhi (Erin J. Neale of counsel), for appellant.
Teresa C. Mulliken, Harpersfield, for respondent.
Christine E. Nicolella, Delanson, attorney for the child.

Fisher, J.
Appeal from an amended order of the Family Court of Delaware County (Rosa, J.), entered January 21, 2021, which dismissed petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected.
Respondent is the mother of the subject child (born in 2018). Several months after the child's birth, petitioner commenced a Family Ct Act article 10 proceeding alleging that the child was neglected by respondent and the child's father. Thereafter, the parties consented [FN1] to a temporary order of removal of the child and placement with Kaline S., a suitable person known to them.[FN2] By order of Family Court, a permanency hearing was scheduled for June 2019 "if the child remains in foster care or is directly placed pursuant to [Family Ct Act §§] 1017 or 1055." Thereafter, respondent consented to a finding of neglect and Family Court issued an order of fact-finding and disposition in May 2019, which ordered, pursuant to Family Ct Act § 1055, that the child is "directly placed" with Kaline S.
In December 2019, while the child was still in a direct placement with Kaline S., petitioner commenced this permanent neglect proceeding seeking to terminate respondent's parental rights, alleging that the child had been in the "care of an authorized agency" for a continuous one-year period. Following a five-day fact-finding hearing,[FN3] although Family Court found "overwhelming evidence" of respondent's neglect, it dismissed the petition on the ground that the child had not been "in the care of an authorized agency for a period of at least one year prior to [petitioner] filing a permanent neglect petition." Specifically, Family Court reasoned that, based on the language in Family Ct Act § 1017 (2) (a), there was a clear distinction between a "direct release to a suitable person" like Kaline S. and a "placement with an authorized agency" like petitioner. Although the word "care" is not defined by statute, Family Court held that petitioner's actions in providing services for the benefit of the child did not rise to that level, such as to "bathe, feed, cloth, educate or do any of the things required to care for the child." Family Court distinguished this case from Matter of Dale P. (84 NY2d 72 [1994]), and noted that the legislative intent of Social Services Law § 384-b was to prevent children from languishing in the foster care system, and it was undisputed that the child had never been in foster care. Petitioner appeals.
During the pendency of this appeal, petitioner commenced and prevailed in an abandonment proceeding that resulted in the termination of respondent's parental rights. Respondent has appealed such order but has yet to perfect same. Although petitioner has already received its requested relief, we find, under the circumstances of this case, that petitioner's appeal — directed at the scope and authority of Family Court to find a child in a direct placement to be under the "care [*2]of an authorized agency" within the context of a permanent neglect proceeding — "raise[s] a substantial and novel issue that is likely to recur, yet evade review, and that, therefore, the exception to the mootness doctrine applies" (Matter of Carmine GG. [Christopher HH.], 174 AD3d 999, 1000 [2019]; see Matter of M.B., 6 NY3d 437, 447 [2006]; Matter of Dixon v County of Albany, 192 AD3d 1428, 1429 [2021]).
Turning to the merits, we find Family Court's interpretation of Social Services Law § 384-b too narrow and calling for a result that is "unnecessarily circuitous" (Matter of Dale P., 84 NY2d at 79; see Matter of Patricia HH. v Laura II., 200 AD2d 115, 117-118 [1994]), and ultimately contrary to the stated legislative intent (see generally Social Services Law § 384-b [1] [a]-[b]). A proceeding for termination of parental rights may be originated by an "authorized agency" such as petitioner (Social Services Law § 384-b [3] [b]), seeking an order for guardianship and custody when a child is a permanently neglected child (see Social Services Law § 384-b [4] [d]). A "permanently neglected child" is defined as "a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of either at least one year or [15] out of the most recent [22] months . . . substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child" (Social Services Law § 384-b [7] [a]).
Regarding the phrase "care of an authorized agency," courts have consistently held that a direct placement authorized by Family Court, like the order of fact-finding and disposition issued in May 2019 pursuant to Family Ct Act § 1055, falls within the purview of Social Services Law § 384-b. In Matter of Dale P. (84 NY2d at 75-76, 78-79), the Court of Appeals rejected the argument that a child had to be formally placed in foster care, where a finding of abandonment had been made and a child's care had been with a suitable person pursuant to Family Ct Act § 1055. Similarly, this Court has rejected the "narrow definitional approach" adopted by Family Court that a child who was directly placed with a suitable person was not within the "care of an authorized agency" (Matter of Patricia HH. v Laura II., 200 AD3d at 117-120). Other Departments of the Appellate Division have also embraced the validity of a direct placement to satisfy Social Services Law § 384-b (see Matter of Hannah D., 292 AD2d 867, 867 [4th Dept 2002] [holding that "we reject the contention of (the mother) that the proceeding to terminate her parental rights on the ground of permanent neglect could not be maintained where, as here, the children had been placed directly with relatives"]; Matter of Anthony Julius A., 231 AD2d 462, [*3]462 [1st Dept 1996] [finding "no merit to (the mother's) contention that her parental rights could not be terminated unless the child had first been placed in the care of an authorized agency. Direct placement authorized by the Family Court can also be a predicate for a termination of parental rights proceeding"]).
Similarly, here, we agree that the child has been in the care of petitioner to satisfy the statute. Petitioner evaluated Kaline S., performing a background check and interview, before ultimately approving her as a suitable person to care for the child. Although Kaline S. declined a foster care subsidy, she agreed to comply with monitoring and the requests of petitioner, and she further submitted to Family Court's jurisdiction, consenting to "cooperate with respect to making the child available for court-ordered visitation with respondent[], siblings and others, appointments with the child's attorneys and clinicians and other individuals or programs providing services to the child[], [and] visits (including home visits) by the child protective agency." The record reflects close involvement and coordination between petitioner and Kaline S. during the pendency of this matter. Accordingly, we find that, in further consideration of Social Services Law § 384-b (1) (b), which was enacted "to provide procedures not only assuring that the rights of the birth parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption," Family Court erred in dismissing the petition on the basis that the child had not been in the "care of an authorized agency."
Having done so, we turn to the merits of the petition to consider whether reversal or remittal is appropriate (see Matter of Brittani A. [Soily A.-S.], 188 AD3d 876, 878-879 [2020]; Matter of Alexisana PP. [Beverly PP.], 136 AD3d 1170, 1171 [2016]). In considering same, "[h]aving the benefit of a full record allows us, in the interest of justice, to rely on our factual review power to make the requisite findings and modify the order if necessary" (Matter of Aishia O., 284 AD2d 581, 584 [2001]; see Matter of Alexisana PP. [Beverly PP.], 136 AD3d at 1171 [2016]).
Upon review of the record, we find that petitioner met its burden of proving that respondent permanently neglected her child due to her illicit drug use, failure to address her addiction and mental health issues, failure to engage with the child and otherwise failing to make progress in achieving the permanency goals, despite petitioner's diligent efforts to encourage and strengthen the parental relationship (see Matter of Colby R. [David Q.], 199 AD3d 1192, 1194 [2021]; Matter of Arianna K. [Maximus L.], 184 AD3d 967, 968 [2020]). This finding is supported by clear and convincing evidence in the record, by and through both documentary and testimonial evidence referencing [*4]conduct or omissions occurring in the year prior to the filing of the petition (see Social Services Law § 384-b [3] [g] [i]; [7] [a]).
Specifically, petitioner's caseworker testified that respondent has failed to follow the recommendations of the Delaware County Alcohol and Drug Abuse Services by consistently not attending her appointments, continuing to use illegal substances and associating with individuals known to use illegal substances. This is corroborated by documentary evidence of numerous failed drug tests, from both announced and unannounced testing. Although there was a period in the middle of 2019 where respondent was testing negative for illegal substances, by August 2019 she began testing positive again for various illegal substances. The caseworker further testified that respondent has had multiple contacts with law enforcement,[FN4] including an incident of endangering the welfare of her child while driving erratically with the child in the vehicle, and several incidents involving drugs, domestic violence, crimes that she committed and other "erratic behavior toward the police."
Relating to respondent's mental health, the caseworker testified that respondent was discharged from counseling sessions because of her failure to participate or to appear. The record confirms this testimony, as well as reveals respondent's noncompliance with mental health medication recommendations and prescription use. Although respondent's drug use was a notable concern for petitioner, respondent's mental health is what several providers believed to have caused her to "spiral" out of control again in August 2019. This culminated in respondent missing several visitation appointments with the child and multiple meetings with programming or parent educators who made diligent efforts to encourage and strengthen respondent's relationship with the child (see Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1148 [2022], lv denied ___ NY3d ___ [Apr. 21, 2022]; Matter of Isabella H. [Richard I.], 174 AD3d 977, 980 [2019]). Based on the foregoing, we find that petitioner has established by clear and convincing evidence that the child has been permanently neglected and termination of respondent's parental rights is in the child's best interests (see Matter of Makayla I. [Sheena K.], 201 AD3d at 1152; Matter of Nahlaya MM. [Zaianna LL.], 193 AD3d 1294, 1298 [2021], lvs denied 37 NY3d 905 [2021]; Matter of Jeremiah RR. [Bonnie RR.], 192 AD3d 1338, 1341 [2021], lv denied 37 NY3d 905 [2021]).
Egan Jr., J.P., Clark, Pritzker and Ceresia, JJ., concur.
ORDERED that the amended order is reversed, on the law, without costs, and petition granted.

Footnotes

Footnote 1: Respondent was hospitalized at the time of placement of the child, and such consent was effected through her counsel.

Footnote 2: It is uncontested that the child has been directly placed with Kaline S. since November 8, 2018.

Footnote 3: The father executed a conditional judicial surrender of his parental rights on the first day.

Footnote 4: The petition alleges that there are "well over 300 incident reports" involving respondent and the police, many of which are included in the record.