OPINION OF THE COURT
W. Dennis Duggan, J.
The issue to be determined in this case is whether a grandmother, with Family Court Act article 6 custody, may directly file a termination of parental rights (TPR) petition, based on severe abuse, against a father who has murdered the mother. Social Services Law § 384-b (3) (b) provides that a TPR proceeding may be originated “by a relative with care and custody of the child” (emphasis added). Despite what appears to be a clear legislative direction, the court holds that this grandmother has no standing to file a TPR.
The maternal grandmother has filed a petition pursuant to Social Services Law § 384-b to terminate the father’s parental rights. She alleges, and it is beyond dispute, that the father murdered the mother of his child. After a jury trial, the father was convicted of reckless manslaughter in the second degree in violation of Penal Law § 125.15 (1). Because of this, the grandmother claims that the child is severely abused, a permitted ground for the termination of parental rights. She seeks summary judgment.
Family History
The 5 V2-year-old child in this case is the son of Paul C., Sr. and Cassandra K. Cassandra disappeared on May 22, 2004. Her skeletal remains were found in October 2004, dumped in a shallow grave near the Normanskill, a stream that marks the southern boundary of the City of Albany. After a four-month investigation, Paul C., Sr. was charged with intentional murder and depraved indifference murder. After a jury trial, he was convicted of second degree manslaughter and sentenced to a term of 5 to 15 years. Police records show that the father and his confederate drove around Albany purchasing a shovel, rope and work gloves while the mother’s body *866 was stuffed in his trunk. The sentencing minutes reveal that the father spent four minutes strangling the life out of the mother. The father has been incarcerated since his arrest four years ago.
Procedural History
The grandmother was awarded full custody, on consent, in June 2004. In November 2006, a second consent order permitted the father to communicate with the child by cards and letters.
Discussion
Social Services Law § 384-b sets forth the predicates and procedures for the termination of parental rights. In summary, parental rights may be terminated because of a parent’s mental illness, abandonment, permanent neglect, or severe or repeated abuse of the child. A predicate for the first three grounds is that the child must have been in the continuous care of the social service agency for at least six months in the case of abandonment and 12 months for permanent neglect and mental illness or retardation cases (these terms are defined in Social Services Law § 384-b [5], [6], [7] and [8]). In this decision, we will examine the predicates for a TPR proceeding that is based on severe abuse.
Section 384-b (8) (a) (iii) defines severe abuse as the homicide of one parent by the other parent. There is no dispute in this case that the father was convicted of manslaughter in the second degree in violation of section 125.15 of the Penal Law in that he recklessly killed the mother. This being one of the enumerated forms of homicide contained in Social Services Law § 384-b, there is no question of fact on this issue; the child has been severely abused by the father.
Even though a child has been severely abused by a parent, there is a condition precedent that must be met before a termination of parental rights determination may be entered by the court. Social Services Law § 384-b (8) (a) (iv) requires that the agency must have made “diligent efforts to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent, when such efforts will not be detrimental to the best interests of the child and such efforts have been unsuccessful and are unlikely to be successful in the *867 foreseeable future.”[1] However, there is an escape clause from this requirement. Diligent efforts are not required if the “court has previously determined . . . that reasonable efforts to make it possible for the child to return to the safety of his home are not required” (Social Services Law § 384-b [8] [a] [iv] [emphasis added]).
This legislative scheme needs a bit of explanation. In the context of this particular section of law, there is no apparent plain English difference between “diligent efforts” and “reasonable efforts.” However, these efforts, are directed at achieving different goals. The “reasonable efforts” expended by the agency must be directed at the return of the child to his home. The “diligent efforts” of the agency must be directed at strengthening the parental relationship and rehabilitating the parent.[2] It is clear that the Legislature has mandated that before a finding of severe abuse can be achieved, the agency must expend both reasonable efforts and diligent efforts in an attempt to achieve both stated goals — unless the agency avails itself of the escape clause. The escape clause permits the agency to apply under Family Court Act § 1039-b to seek a determination that reasonable efforts are not required.[3] It is also clear that the law requires that the agency must perform these tasks and not a foster parent or another relative with whom the child is placed under article 10 or a relative with custody obtained under article *868 8. It is also clear that in this case the agency has made neither reasonable nor diligent efforts because it never filed an abuse petition against the father to put those mandates into play. Because no abuse or neglect petition was ever filed by the agency pursuant to Family Court Act § 1031, there has never been a request made for the court to determine that reasonable efforts were not required pursuant to Family Court Act § 1039-b (a). It is clear that a section 1039-b finding of no need for reasonable efforts can only be made pursuant to a petition filed under section 1031.
Based on the legislative scheme described above, it is clear that the grandmother may not proceed with a TPR petition under the circumstances of this case. The first reason is that there is no provision in the Family Court Act or in the Social Services Law that permits a private citizen, or an agency for that matter, from bypassing an article 10 neglect or abuse finding and proceeding directly to a TPR proceeding. Admittedly, it can be done quickly. In this case, the agency could have filed an abuse petition against the father and asked for a no reasonable efforts finding. The Department would have been granted summary judgment on the severe abuse fact issue because the criminal conviction was based on proof beyond a reasonable doubt which is higher than the clear and convincing evidence standard required to support a termination of parental rights (see Social Services Law § 384-b [3] [g]). If the court also made a “no reasonable efforts” finding, the Department could then proceed directly on a petition to terminate the father’s rights under Social Services Law § 384-b (see Social Services Law § 384-b [8] [d]).
What is clear from a fair reading of Family Court Act article 10 and Social Services Law § 384-b, is that it is the agency that must be involved in the reasonable efforts and diligent efforts mandates of those statutes. This is so, despite the fact that the law permits the court to allow a law guardian or person with custody to file an abuse petition under Family Court Act article 10 and a termination petition under Social Services Law § 384-b. There is no reasonable reading of these two laws which supports a conclusion that the agency-required efforts may be delegated to a law guardian or to a private citizen or that the efforts requirements can be dispensed with altogether in cases where someone other than an agency is prosecuting the petition. For this reason, the law provides no way for a private citizen, who has obtained custody in a separate article 6 proceeding, to proceed directly with a TPR petition.
*869 It is not in dispute that the child has been severely abused because the father killed the mother. However, it is also clear that the agency has not made any diligent efforts as required by Social Services Law § 384-b (8) (a) (iv). Because there was no abuse petition filed under Family Court Act § 1031, the agency was never in a position to request a finding that no reasonable efforts were required. Because no such order was ever issued, the agency was never absolved of its duty to make diligent efforts pursuant to Social Services Law § 384-b (8) (a) (iv). In short, the grandmother cannot get there from here.
Social Services Law § 384-b (3) (b) provides that a TPR proceeding may be originated by an agency, a foster parent or law guardian if the agency was directed to file and fails to do so or “by a relative with care and custody of the child.” It is not readily apparent why the Legislature excluded a person with custody from the court approval process required for a foster parent or law guardian. What is clear from a comprehensive reading of this section is that for such a proceeding to be authorized, the child must have come into care pursuant to an article 10 abuse or neglect proceeding.[4] The Legislature could not have meant to construct a bypass around the very intricate and carefully constructed statutory framework that applies to abuse and neglect cases, which have as their first goal the reunification of the parent and child, helped by the reasonable and diligent efforts of the agency, by giving ordinary article 6 custodians an all access pass to termination of parental rights proceedings.
Evidence for this can be found in the legislative and executive memoranda in support of the amendment that added the provision under discussion in this decision (L 1994, ch 601).[5] Both memoranda state that the purpose is to permit “relatives of a child to file a petition to terminate parental rights, and institute a proceeding for the adoption of a child, when the child has been placed directly by the court with the relatives” (Governor’s Program Bill Mem and Governor’s Approval Mem, L 1994, ch *870 601 [emphasis added]). Placement is a term of art under article 10 of the Family Court Act and refers to a particular disposition of an abuse or neglect case. The child in this case was not placed in the custody of the grandmother pursuant to Family Court Act § 1017 (2) (a) (i) or Family Court Act § 1055 (a).[6]
Because the child in this case was not placed with the grandmother pursuant to a Family Court Act article 10 disposition, the grandmother’s summary judgment motion must be denied and her petition is dismissed.[7]

. Social Services Law § 384-b (8) (a) (iv) goes on:
“Where a court has previously determined in accordance with this chapter or the family court act that reasonable efforts to make it possible for the child to return safely to his or her home are not required, the agency shall not be required to demonstrate diligent efforts as set forth in this section.”
The phrase “this chapter” refers to proceedings under Social Services Law § 358-a involving children who come into agency care pursuant to a surrender instrument or a voluntary placement agreement. These circumstances do not apply to this case. The phrase “family court act” refers to a proceeding brought under article 10 of the Family Court Act to determine if a child is neglected or abused and, in particular, Family Court Act § 1039-b, “Termination of reasonable efforts.” This is the section that applies to this case.

. It should be noted that the term “diligent efforts” has a somewhat different meaning in cases where the termination is based on permanent neglect (see Social Services Law § 384-b [7] [f]).

. Under Family Court Act § 1032 (b), any person approved by the court may file a neglect petition. It is not clear from an overall view of Family Court Act article 10 just how a private citizen would prosecute a neglect or abuse petition but it is clear that it would be the duty of the agency to provide the services. For this reason, Family Court Act § 1039-b mandates that the application for a “no reasonable efforts” finding be made by a “social services official.”

. For additional evidence that TPR proceedings pursuant to Social Services Law § 384-b must first be preceded by a Family Court Act article 10 proceeding, consider the following. Family Court Act § 1051 (e) provides that if the court makes a finding of severe abuse in an article 10 abuse proceeding, such finding “shall be admissible in a proceeding to terminate parental rights pursuant to paragraph e of subdivision four of section three hundred eighty-four-b of the social services law” (emphasis added). Also, the termination of parental rights is not an authorized disposition under Family Court Act § 1052.

. By this amendment, the Legislature ratified the Court of Appeals decision in Matter of Dale P. (84 NY2d 72 [1994]).

. The provisions of article 10 of the Family Court Act and Social Services Law § 384-b have an intersecting complexity that rivals the design plans for a nuclear submarine. Under Family Court Act § 1017 (2) (a) (i), the court may place a child with a relative or other suitable person “pursuant to article six of this act.” This provision continues to befuddle the family courts and the appellate courts. Article 6 was designed to resolve disputes between parents and was not meant to do the work of a dispositional order in a neglect proceeding. For example, are the standards to modify an article 6 order, issued pursuant to article 6 between two parents the same as an article 6 order issued pursuant to article 10 between a family friend and a parent? For proof of appellate befuddlement see Matter of Felicity II. v Lance RR. (27 AD3d 790 [2006]), reversed shortly thereafter by Matter of Seth Z. (45 AD3d 1208 [2007]).

. Sometimes, common sense can bypass a detailed discussion of a convoluted statutory scheme and quickly come up with the correct answer. Say, for example, in a divorce action, the mother obtains physical and legal custody of a child. Would anyone argue that she could then file a TPR petition if the father later became mentally ill. Or, could she file a TPR based on permanent neglect? Both of those sections require that the child be in the agency’s care for 12 months and that the father have been the recipient of an agency’s reasonable efforts for that time period. Given these conclusions, why would one think that the mother could file a private TPR based on severe abuse? On the other hand, a parent can effectuate a termination of parental rights by successfully proving in an adoption proceeding that the consent to the adoption is not required from a parent because that parent has abandoned the child or suffers from a prolonged mental illness or mental retardation (see Domestic Relations Law § 111 [2]). Noticeably absent from this section is a provision dispensing with the consent of a parent who has severely abused his child.