OPINION OF THE COURT
W. Dennis Duggan, J.
Holding
The court finds: (1) that the respondent has severely abused his son by killing his son’s mother; (2) that the Department for Children, Youth and Families (the Department) should not be required to exercise reasonable efforts to return the child to the father’s home because such efforts would be contrary to the child’s best interest and would not likely result in the reunification of the child with the parent in the foreseeable future; (3) that the Department should not be required to exercise diligent efforts to strengthen the parent-child relationship because all such efforts would be detrimental to the best interests of the child; and (4) that the parental rights of the respondent should be terminated.
Procedural Status
Before the court are three matters: (1) the maternal grandmother’s petition to terminate the parental rights (TPR) of the father to his son born March 29, 2003; (2) the grandmother’s motion for summary judgment; and (3) the Department’s motion for a “no reasonable efforts” finding.
In Matter of Paul C. (21 Misc 3d 864 [2008]), this court held that the grandmother-custodian could not file a TPR petition because the Department never exercised reasonable efforts to reunite the father with his son nor did it seek to be excused from that duty by requesting a “no reasonable efforts” finding. After an appeal, this matter was remitted to this court by the *1014 Appellate Division with a direction to add the Department as a party (Matter of Paul Z. [Karen AA. — Paul N.], 68 AD3d 1473 [2009]).
The Appellate Division’s rationale can be summarized as follows: (1) Before a custodian (in this case the grandmother) may file a TPR petition pursuant to Social Services Law § 384-b, the Department must ordinarily have first exercised reasonable efforts to return the child to his home and used diligent efforts to strengthen the parental relationship. (2) The Department could, however, be excused from this duty if it was successful on a “no reasonable efforts” motion. (3) The law requires that this motion be made within the context of a pending severe abuse petition filed by the Department. The Department never filed such a petition. (4) This court found that a Department’s exercise of reasonable efforts or obtaining a “no reasonable efforts” finding was a necessary predicate for the grandmother to proceed on her termination petition. (5) The Appellate Division agreed with this court on that point but found that the Department should be added as an interested party to the grandmother’s TPR petition and returned the matter to this court for proceedings consistent with its decision.
Findings of Fact
The record before the court establishes that there is no triable issue of fact and, specifically, by clear and convincing evidence, the following:[2]
1. A jury found beyond a reasonable doubt that the father killed the mother by strangling her.
2. For his conviction of manslaughter in the second degree, a class C felony, in violation of Penal Law § 125.15 (1), the father was sentenced to a term of imprisonment of 5 to 15 years.
3. There is no evidence that the deceased mother committed domestic violence against the respondent that was a contributing factor to her death. On this issue, the Department cannot be expected to prove a negative. To require the Department to prove that the respondent was never the victim of domestic violence at the hands of the victim would place too great an evidentiary burden on the wrong side of the balance and also unduly burden a fair sense of due process.
*1015 In truth, the law does not make this an unbounded search. Social Services Law § 384-b (8) (a) (iii) requires that the abuse be “a factor in causing the homicide.” The respondent has not raised that issue in his response to the summary judgment motion, except to say that the Department has not negatived the proposition. In any case, the respondent’s response, by an attorney’s hearsay affidavit, has no probative value and is not sufficient to defeat a motion for summary judgment.
There is no published case law on the degree to which domestic violence must be “a factor in causing the homicide” where it could successfully defeat a TPR petition alleging severe abuse (Social Services Law § 384-b [8] [a] [iii]). The fact that the Legislature chose not to adopt the extreme emotional disturbance standard, which can reduce intentional murder to manslaughter in the first degree, is some evidence that, in the TPR context, the causal relationship between the domestic violence perpetrated by the deceased parent on the killing parent is to be given a wider berth (see Penal Law § 125.20 [2]). However, the Penal Law treatment of this area can be instructive. The domestic violence defense in a severe abuse or termination of parental rights case is the equivalent of an affirmative defense in a criminal case. It must be raised by the respondent and proved by a preponderance of the evidence (see Penal Law § 25.00 [2]). In the criminal context, it is an affirmative defense to intentional murder, which reduces that crime to manslaughter in the first degree, in that the defendant “acted under the disturbance of extreme emotional disturbance for which there was a reasonable explanation or excuse” (Penal Law § 125.25 [1] M).
The sentencing minutes reveal that at trial, the prosecution attempted to prove that the father intentionally killed the mother while the defense tried to prove that someone else did it. The court submitted intentional murder and intentional manslaughter to the jury but not manslaughter based on acting under an emotional disturbance. At the respondent’s request, the court also submitted reckless manslaughter (Penal Law § 125.15 [1]). The jury convicted on that charge. While one cannot speculate as to what the jury considered in its deliberations, it is worth noting that the absence of abuse of the defendant by a victim is not an element of the crime of reckless manslaughter. More importantly, the respondent never raised this issue either as a justification defense or as a mitigating factor. It is true that a conviction on a lesser included offense works as an acquit *1016 tal on all greater included offenses (see CPL 300.50 [4]) but manslaughter in the first degree (intentional death caused while acting under extreme emotional disturbance) was not submitted to the jury. Accordingly, there is no collateral estoppel help for the respondent to be found in the jury’s verdict. These facts permit only one conclusion: that the mother’s actions, whatever they were if any, had no causal relation to her strangulation by the father.
4. The child lived with the father and the mother for the first 14 months of the child’s life. That arrangement ended when the father strangled the mother in the presence of her two children, stuffed her into a trunk and disposed of her body in a shallow grave near the Normanskill Creek at the outskirts of the city of Albany.
5. With the consent of the father, the child has been in the custody of the maternal grandmother since June 8, 2004. By the time of the father’s earliest release date from prison, in January 2011, the child will have been in the custody of his grandmother for 6.5 years or 85% of the child’s life.
6. Under any burden of proof and applying any standard, it would be contrary to the child’s best interest to be taken out of the custody of the grandmother and returned to the care of the father, in the unlikely event that he is paroled in January 2011.
7. In this case, the father brutally strangled the mother in the presence of her two children and then disposed of her body with less dignity than one would give to a bag of garbage. To hide his crime from the authorities, the mother’s family and his own son, the father was prepared to, and did, deny the mother a decent and respectful burial. More importantly he was prepared to then raise his son with the lie that his mother abandoned him. That is a level of deceit that is impervious to hyperbole and is repulsive to any sense of human decency. That the Department should ever be required to attempt to strengthen this parent-child relationship is a proposition so completely without support as to be beyond the obvious.
8. To belabor the obvious, however, it is instructive to recount the circumstances of this case. From May 22, 2004 to October 2004, this was a missing person case. On October 14, 2004 (which would have been the mother’s 20th birthday), when the mother’s skeletal remains were found in the woods, it turned into a homicide investigation. From May 22, 2004, when the respondent killed the mother, he obviously engaged in a tangled web of deceit to misguide the police as to the mother’s whereabouts because the body was not found for four months.
*1017 9. It can be inferred beyond all reasonable doubt that the father was prepared to deceive his son and everyone connected with the mother for the rest of his life. That would be the only way he could continue to escape the long arm of the law. It follows from this that the respondent was prepared to let his son live every day for the rest of that boy’s life believing that his mother had abandoned him. By disposing of the mother’s body in a manner that would insure that it became carrion for scavenging animals and maggots, and thus never become evidence which could inculpate him in a homicide case, the father showed that he was prepared to go to his grave deceiving the son who he now professes to love.
10. If there were any mitigating factors attendant to the respondent’s strangling the life out of his son’s mother, they have been completely extinguished by the respondent’s cover-up of his crime. The evidence at the criminal trial was that it would have taken about four minutes for the mother to die (statement of respondent’s attorney at sentencing, minutes at 6). His choice to slowly allow the body of his son’s mother to rot in some damp woods, so that her remains could never lend a voice to justice and therefore incriminate him in the crime, is evidence that the respondent was prepared to place his self-interest above and beyond that of his son, his son’s family and the community for the rest of his life and beyond. If the father had been successful, the legacy of the child’s mother would have been that she abandoned her children. By killing this child’s mother, the father has forfeited all rights to be considered as a father, both by the law and by a decent society.
11. The killing of one parent by another is so contrary to any civilized concept of parenthood that one can hardly conceive of any circumstances — and there are none in this case — that would justify either placing a child back in the care of the killing parent or making any efforts to accomplish that goal.
Conclusions of Law
This court finds that all the statutory predicates for the termination of this parent’s rights to his son have been met by clear and convincing evidence. There are no triable issues of fact on this issue (Matter of Rebecca KK., 53 AD3d 710 [2008]). The record also clearly and convincingly supports a finding that any attempt to encourage and strengthen the parent-child relationship would be detrimental to the child’s best interest and the Department should not be required to make diligent efforts *1018 in this regard nor make reasonable efforts in the future to make it possible for the child to return safely to the care of his father (Matter of Carlos R., 63 AD3d 1243 [2009]; Matter of Damion D., 42 AD3d 715, 716 [2007]).
The respondent in this case has been convicted of manslaughter in the second degree. The mother of his son was the victim. Upon a showing that the father was not “a victim of physical, sexual or psychological abuse” at the hands of the mother that was causally related to the homicide, this would mean, by definition, that the child has been “severely abused” by the father (Social Services Law § 384-b [8] [a] [iii]). Upon a showing that reasonable efforts to work toward reunification would be contrary to the child’s best interest, the law allows the Department to be relieved of its duty to exercise reasonable efforts in that regard (Family Ct Act § 1039-b).[3] Upon a showing that the child is severely abused and that reasonable efforts are not required, the law permits the termination of parental rights. The court finds that all three of these requirements have been met by clear and convincing evidence and the parental rights of the respondent shall be terminated.
Ordinarily, the Department would be required to exercise “diligent efforts” to encourage and strengthen the parental relationship, including efforts to rehabilitate the respondent “when such efforts [would] not be detrimental to the child . . . and such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future” (Social Services Law *1019 § 384-b [8] [a] [iv]).[4] In a typical case, to get out from under this diligent efforts requirement, one would have expected the Department to have filed a severe abuse petition pursuant to Family Court Act § 1031 (f) and then move for a “no reasonable efforts” finding pursuant to Family Court Act § 1039-b (b) (1). This motion would be based on the fact that the child was subjected to “aggravated circumstances” as defined, in this case, by Social Services Law § 384-b (8) (a) (iii) by way of Family Court Act § 1012 (j). “Aggravated circumstances” essentially means a severely abused child defined by Social Services Law § 384-b (8), which means that the respondent committed the crime of manslaughter against the mother. No doubt there must be an easier way for the law to describe this process but the end result of a “no reasonable efforts” finding is that the Department will also be later absolved for not making diligent efforts to strengthen the parental relationship.
If the Department had filed a severe abuse petition and then made a motion for a “no reasonable efforts” finding, the Depart *1020 ment then could have immediately filed a termination of parental rights petition pursuant to Social Services Law § 384-b. The Department did none of these things in this case, which was understandable under the circumstances, since the child had been in the long-time care of the maternal grandmother and the father was serving a long jail sentence.
The matters became more complicated, however, when the grandmother filed a termination of parental rights petition on her own. This court found she could not do this because only the Department is charged with making reasonable and diligent efforts (absent a “no reasonable efforts” finding) which is a prerequisite for the filing of a termination of parental rights petition (Matter of Paul C., 21 Misc 3d 864 [2008]). The Appellate Division agreed with this court’s decision but held that the Department should be made a party to the grandmother’s petition for purposes of making a “no reasonable efforts” motion. Under the narrow facts of this case, the Appellate Division has dispensed with the requirement that a “no reasonable efforts” motion be made within the context of a severe abuse petition filed pursuant to Family Court Act § 1031 (f). With a “no reasonable efforts” finding, the maternal grandmother then becomes authorized to file a termination of parental rights petition pursuant to Social Services Law § 384-b (3) (b). (Matter of Paul Z. [Karen AA.— Paul N.], 68 AD3d 1473 [2009].)
As noted elsewhere, the Department, in effect, gets two bites of the apple with respect to being relieved of the efforts that would allow a child who has been severely abused to live with the abusing parent. In the beginning of the case, it can seek a “no reasonable efforts” finding. If the Department makes no reasonable efforts at the start, it can show in a TPR severe abuse proceeding that diligent efforts would have been detrimental to the child’s best interest.[5] The reason that a custodian may not file a termination petition without some participation by the Department is that the law designates the Department as the lead agency, so to speak, to provide the services that would constitute reasonable or diligent efforts.
*1021 Appellate Division cases have authorized in a case such as this (and it is clear that the statutory scheme also permits) what could be described as a rocket-docket termination of parental rights proceeding (Matter of Kyle M., 5 AD3d 489 [2004]). For example, in the case of a parental homicide, as is the case here, the Department could simultaneously file a severe abuse petition, a motion for a “no reasonable efforts” finding, a motion for a summary judgment on the severe abuse petition, a termination of parental rights petition based on the severe abuse of a child and a motion for a summary judgment on the termination of parental rights issue. No doubt that it would be the rare case that could proceed with such dispatch, but all of this could be granted upon the certificate of conviction and the court’s finding that the respondent was not a victim of domestic violence at the hands of the deceased parent and that under the circumstances, any efforts to encourage and strengthen the parental relationship would have been or would be detrimental to the child’s best interest.
Upon the remittance from the Appellate Division, before this court is the maternal grandmother’s termination of parental rights petition, her motion for summary judgment and the agency’s motion for a “no reasonable efforts” finding. The only thing missing from the orderly sequence of legal proceedings is the severe abuse petition, the necessity of which has been dispensed with by the Appellate Division and this court’s finding that diligent efforts would have been, and would be, detrimental to the best interest of the child and will be for the foreseeable future. Based on the record before the court, the motion for a “no reasonable efforts” finding and summary judgment terminating the father’s parental rights will be granted based on severe abuse of the child by the father coupled with a finding that diligent efforts would be contrary to the best interest of the child.
Orders
Based on these findings of fact and conclusions of law, it is ordered and adjudged that:
1. The Department is not required to make reasonable efforts directed towards the return of the child to the father or to make diligent efforts to strengthen the parental relationship.
*1022 2. The motion for summary judgment is granted and the parental rights of the respondent with respect to his son are terminated and the care, custody and guardianship of the child is committed to his maternal grandmother.
[Portions of opinion omitted for purposes of publication.]

. This court finds persuasive the burden-of-proof reasoning contained in Matter of Jaime S. (9 Misc 3d 460 [2005]) and makes all its findings based on clear and convincing evidence.

. The legislative scheme on this subject has an eyes-glaze-over effect for any diligent reader. Working through the maze, it looks like this: For the court to find that reasonable efforts are not required, several predicates must be established. First, the court must determine that reasonable efforts would not be in the best interest of the child and would not be likely to result in the reunification of the parent and child in the foreseeable future. Second, the child must be found to have been subject to “aggravated circumstances.” Aggravated circumstances is defined by Family Court Act § 1012 (j) and includes a child who was severely abused. A severely abused child is defined by Social Services Law § 384-b (8) (a) and includes a child of a parent who has committed the crime of manslaughter in the second degree or higher against the other parent, unless the court finds that the killing parent was not the victim of domestic violence at the hands of the person killed or, if there was such violence, that it was not a factor in the homicide. In which case the severe abuse is effectively forgiven for termination purposes. The court must also find that the Department made “diligent efforts” to encourage and strengthen the parental relationship and rehabilitate the parent, unless such efforts have been unsuccessful and are unlikely to be successful in the foreseeable future and such efforts would have been or would be detrimental to the best interest of the child. If, however, a court determines that “reasonable efforts” are not required then diligent efforts are also not required.

. There is considerable overlap between the “reasonable efforts” requirement of Family Court Act § 1039-b and the diligent efforts requirement of Social Services Law § 384-b. Family Court Act § 1039-b, “Termination of reasonable efforts,” describes the circumstances under which the court may find “that reasonable efforts to return the child to his or her home are no longer required” (Family Ct Act § 1039 [a] [emphasis added]). The courts have interpreted the last clause to also mean that reasonable efforts are not or were not required (Matter of Marino S., 100 NY2d 361 [2003]). Under Social Services Law § 384-b (4) (e), parental rights may be terminated if the child was severely abused but only if the Department has made diligent efforts to encourage and strengthen the parental relationship including efforts to rehabilitate the respondent — if such efforts were not detrimental to the best interest of the child — and such efforts were unsuccessful and are unlikely to be successful in the foreseeable future. If, as noted in the preceding footnote, however, the court finds that reasonable efforts are not required, then diligent efforts would not be required. Conversely, in a TPR severe abuse proceeding, the court can, in effect, make a “nunc pro tunc” finding that no reasonable efforts were required because diligent efforts would have been detrimental to the child’s best interest. Trying to derive some coherence from this jumbled relationship between “reasonable efforts” and “diligent efforts” is, admittedly, not easy.
The dictionary definition of reasonable is, “Governed by or in accordance with reason or sound thinking.” (Webster’s II New College Dictionary, at 923 [1995].) Diligent is defined as, “Marked by persevering, painstaking efforts: assiduous” (Webster’s II New College Dictionary, at 319 [1995]). Clearly, diligent efforts and reasonable efforts do not mean the same thing using plain English. The Legislature, in Family Court Act article 10 and in Social Services Law § 384-b, seems to conflate these two terms. As noted above, a finding that reasonable efforts are not required will also alleviate the requirement for making diligent efforts. “As used in this subdivision, ‘diligent efforts’ shall mean reasonable attempts” (Social Services Law § 384-b [7] [f]).

. “The upshot [of Marino S.] is that the Social Services Agency . . . may unilaterally desist from engaging in reasonable efforts to rehabilitate the parent and reunite the family, and . . . subsequently file a 1039-b motion.” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1039-b.)