Matter of Nahlaya MM. (Zaianna LL.) (2021 NY Slip Op 02576)





Matter of Nahlaya MM. (Zaianna LL.)


2021 NY Slip Op 02576


Decided on April 29, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:April 29, 2021

530622
[*1]In the Matter of Nahlaya MM., a Permanently Neglected Child. Chemung County Department of Social Services, Respondent; Zaianna LL., Appellant. (Proceeding No. 1.)
In the Matter of Ka'mara MM., a Permanently Neglected Child. Chemung County Department of Social Services, Respondent; Zaianna LL., Appellant. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date:March 17, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Reynolds Fitzgerald, JJ.

Lisa K. Miller, McGraw, for appellant.
M. Hyder Hussain, County Attorney, Elmira (Mark H. Smith of counsel), for respondent.
Pamela Doyle Gee, Big Flats, attorney for the children.



Lynch, J.
Appeal from an order of the Family Court of Chemung County (Rich Jr., J.), entered October 9, 2019, which, among other things, in proceeding Nos. 1 and 2 pursuant to Social Services Law § 384-b, granted petitioner's motions to revoke a suspended judgment, and terminated respondent's parental rights.
Respondent (hereinafter the mother) is, as relevant here, the mother of two children (born in 2014 and 2015).[FN1] Family Court adjudicated the children to be permanently neglected and, following a dispositional hearing, granted the mother a one-year suspended judgment on October 6, 2017.[FN2] Petitioner moved to revoke the suspended judgment 17 days later. In December 2017, following a hearing, Family Court, among other things, granted the motion and terminated the mother's parental rights to the children. On appeal, this Court reversed so much thereof as revoked the suspended judgment against the mother and terminated her parental rights, finding, among other things, that petitioner failed to demonstrate the mother's violation of the suspended judgment by a preponderance of the evidence (Matter of Nahlaya MM. [Britian MM.], 172 AD3d 1482 [2019]).[FN3]
On May 13, 2019, Family Court reinstated the suspended judgment against the mother. Nine days later, petitioner again moved to revoke the suspended judgment and to terminate the mother's parental rights. Petitioner then filed a second motion to revoke the suspended judgment on August 1, 2019, including certain updated information. Following a combined fact-finding hearing, Family Court, as relevant here, revoked the suspended judgment and terminated the mother's parental rights to the children. The mother appeals, challenging the revocation of the suspended judgment and termination of her parental rights.
"A suspended judgment is intended to provide a parent who has permanently neglected his or her child[ren] with a brief period within which to become a fit parent [so] that the child[ren] can be returned to [him or her] in safety. A parent's noncompliance with the terms of the suspended judgment during this grace period, if established by a preponderance of the evidence, may end with revocation of the suspended judgment and termination of his or her parental rights" (Matter of Destiny NN. [Nikita ZZ.], 174 AD3d 1079, 1079 [2019] [internal quotation marks and citations omitted]; see Matter of Joseph QQ. [Karissa RR.], 161 AD3d 1252, 1252 [2018], lv denied 31 NY3d 912 [2018]; Matter of Jerhia EE. [Benjamin EE.], 157 AD3d 1017, 1018 [2018]). "[L]iteral compliance with the terms of the suspended judgment will not suffice to prevent a finding of a violation. A parent must [also] show that progress has been made to overcome the specific problems which led to the removal of the child[ren]" (Matter of Maykayla FF. [Eugene FF.], 141 AD3d 898, 899 [2016] [internal quotation marks and citations omitted]; see Matter of Jonathan J., 47 AD3d 992, 993 [2008], lv denied 10 NY3d 706 [2008]). "Family Court's findings [*2]are to be accorded great deference and will not be disturbed as long as they are supported by a sound and substantial basis in the record" (Matter of Nahlaya MM. [Britian MM.], 172 AD3d at 1483).
Initially, like on the prior appeal of this matter, we feel compelled to note that much of the evidence presented during the fact-finding hearing pertained to conduct that either predated issuance of the suspended judgment, occurred during periods when it was not in effect, or concerned conduct for which petitioner did not provide specific dates (see Matter of Nahlaya MM. [Britian MM.], 172 AD3d at 1484). Petitioner's pattern of relying on conduct that did not occur within the relevant time frame cannot be countenanced, particularly where a parent's parental rights are at stake. Any such irrelevant evidence has not been considered in our analysis.
Nevertheless, petitioner proffered sufficient evidence of noncompliance during the relevant grace period to support Family Court's determination. The suspended judgment required the mother to, among other things, "undergo a complete alcohol and drug evaluation by a licensed professional approved by [petitioner,] . . . actively and honestly follow any and all recommended courses of treatment, attend all meetings until successfully discharged, and fully comply with any recommended after care and/or discharge plans." The mother was also required to complete a protective parenting program, a domestic violence counseling program, a parenting education program, and an individual and/or family counseling program approved by petitioner. Additionally, the mother was to "attend all scheduled visitation with the child[ren] and follow all rules for visitation set by [petitioner]," and "maintain a stable, safe and sanitary home environment for the child[ren]."
During the fact-finding hearing, petitioner submitted evidence of records from a mental health service provider documenting that petitioner missed two scheduled intake appointments on June 6, 2019 and June 14, 2019.[FN4] A foster care caseworker who coordinated services for the mother testified that she always advised the mother when an intake was scheduled. The records demonstrate that the mother also missed her evaluation appointment at the Trinity alcohol and drug treatment program on June 11, 2019, despite being referred for services there. Although a letter was sent to the mother advising her to reschedule the appointment, it was returned to Trinity as undeliverable. The foster care caseworker testified that, since she had referred the mother for services again in June 2019, she had attempted to reach the mother several times by sending letters to previous addresses hoping they would be forwarded to her current address, of which she was unaware. She also reached out to the mother's grandmother, who did not know where the mother was residing. As to the mother's living arrangements, she testified that she was currently living with her mother — who has an [*3]extensive Child Protective Services history — and began living there in March 2019. The mother acknowledged that her living situation was not appropriate for the children given her mother's Child Protective Services record. Moreover, the mother conceded that, as of her testimony in August 2019, she had failed to successfully complete four of the programs that were required of her.[FN5] On this record, there is a sound and substantial basis for Family Court's determination that petitioner proved a violation of the suspended judgment by a preponderance of the evidence.
Contrary to the mother's contention, Family Court engaged in a best interests analysis, and its determination to terminate her parental rights has a sound and substantial basis in the record. "While a parent's failure to comply with the conditions of a suspended judgment does not automatically compel termination of parental rights, that noncompliance constitutes strong evidence that termination is, in fact, in the best interests of the child[ren]" (Matter of Jason H. [Lisa K.], 118 AD3d 1066, 1068 [2014] [internal quotation marks and citations omitted]; see Matter of Brandon N. [Joseph O.], 165 AD3d 1520, 1522 [2018]). At the time of the fact-finding hearing, the children had been residing with the foster mother for the majority of their lives — nearly 4½ and 3½ years for the older child and the younger child, respectively — and the foster care caseworker had no concerns about the foster mother's ability to provide appropriate care. The foster mother confirmed that the children were fully integrated into her family and expressed her desire to adopt them. She explained that, when she previously took the children to visit the mother, they would indicate that they did not want to visit and the older child would have outbursts. The foster mother reiterated that the mother visited with the children on only a sporadic basis. Given the children's lengthy stay in foster care, the foster mother's willingness to be an adoptive resource, the mother's noncompliance with the terms of the suspended judgment and her sporadic visitation, there is a sound and substantial basis in the record to support Family Court's determination that termination of the mother's parental rights was in the best interests of the children (see Matter of Brandon N. [Renee N.], 165 AD3d 1516, 1520 [2018], lv denied 32 NY3d 914 [2019]; Matter of Cole WW. [Amanda WW.], 106 AD3d 1408, 1410 [2013], lv denied 21 NY3d 865 [2013]; Matter of Clifton ZZ. [Latrice ZZ.], 75 AD3d 683, 685 [2010]).
Egan Jr., J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother has other children who are not the subject of this appeal.

Footnote 2: The mother and the children's father had previously consented to a finding of neglect with respect to the children.

Footnote 3: A permanent neglect finding was also entered against the father and a suspended judgment was issued in his favor. Family Court also revoked the suspended judgment as it pertained to the father and terminated his parental rights to the children. Upon his appeal — which was consolidated with the mother's appeal — this Court concluded that Family Court's decision to revoke the suspended judgment as to the father had a sound and substantial basis in the record (Matter of Nahlaya MM. [Britian MM.], 172 AD3d at 1485-1486). Nevertheless, because Family Court failed to consider whether termination of the father's parental rights was in the children's best interests and the record was insufficient to undertake an independent review of the issue, this Court reversed so much of the order as terminated the father's parental rights and remitted the matter for a dispositional hearing. The father has since surrendered his parental rights to the children.

Footnote 4: We are mindful that this conduct occurred subsequent to the filing of petitioner's May 22, 2019 motion to revoke the reinstated suspended judgment. Although proof of conduct that occurs subsequent to the filing of a motion to revoke a suspended judgment generally may not be considered when determining whether petitioner has demonstrated noncompliance with its terms (see Matter of Nahlaya MM. [Britian MM.], 172 AD3d at 1484; Matter of Christian Lee R., 38 AD3d 235, 235-236 [2007], lv denied 8 NY3d 813 [2007]; cf. Matter of Alexander Z. [Melissa Z.], 129 AD3d 1160, 1161 [2015], lv denied 25 NY3d 914 [2015]; Matter of Ashley X., 50 AD3d 1194, 1196 [2008]), petitioner filed a second motion to revoke the suspended judgment on August 1, 2019, thereby extending the relevant time frame to that date. Therefore, proof of noncompliance with the suspended judgment between the periods of October 6, 2017 to October 23, 2017 and May 13, 2019 to August 1, 2019 may be considered.

Footnote 5: Although petitioner moved to revoke the suspended judgment only nine days after it had been reinstated, by the time of the fact-finding hearing, the mother had benefitted from a nearly five-month grace period in which to complete the subject programs (compare Matter of Nahlaya MM. [Britian MM.], 172 AD3d at 1484-1485).