Matter of R.E. (S.F.) (2025 NY Slip Op 03377)

Matter of R.E. (S.F.)

2025 NY Slip Op 03377

Decided on June 5, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 5, 2025

CV-24-1093
[*1]In the Matter of R.E., a Permanently Neglected Child. Ulster County Department of Social Services, Respondent; S.F., Appellant.

Calendar Date:April 28, 2025

Before:Garry, P.J., Egan Jr., Clark, Lynch and Mackey, JJ.

Lindsay H. Kaplan, Kingston, for appellant.
Ulster County Department of Social Services, Kingston (Rebecca L. Balzac of counsel), for respondent.
Claudia S. Davenport, Kingston, attorney for the child.

Egan Jr., J.
Appeal from an order of the Family Court of Ulster County (Anthony McGinty, J.), entered May 20, 2024, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to revoke a suspended judgment, and terminated respondent's parental rights.
Respondent (hereinafter the father) is the father of the child (born in 2018). The child was removed from the care of his parents in 2020 and placed in foster care, and that placement was continued after Family Court determined in 2021 that both parents had neglected him (see Matter of R.E. [S.F.], 212 AD3d 1009 [3d Dept 2023]). Petitioner subsequently commenced a permanent neglect proceeding against both parents and, as is relevant here, the father made admissions of permanent neglect and agreed to an order of fact-finding and disposition with a suspended judgment set to expire on January 31, 2024. The suspended judgment required the father to, among other things, keep petitioner informed of his current address and telephone number, notify petitioner in advance if he could not attend scheduled visitation with the child and submit to drug testing as arranged by petitioner.
Petitioner sought to revoke the suspended judgment and terminate the father's parental rights via a petition filed in July 2023, alleging that the father had violated the conditions of the suspended judgment. Following a fact-finding hearing that ended in March 2024, Family Court determined from the bench that the father had violated conditions of the suspended judgment and conducted a dispositional hearing the same day. At the conclusion of the dispositional hearing, Family Court rendered a decision from the bench in which it determined that revoking the suspended judgment and terminating the father's parental rights would be in the best interests of the child. The father appeals from the written order issued thereon.
We affirm. A suspended judgment is intended to give a parent who has permanently neglected his or her child with a brief period of time within which to become a fit parent who can be safely reunited with the child (see Matter of Alexis X. [Tara Y.], 222 AD3d 1213, 1213-1214 [3d Dept 2023]; Matter of Elaysia GG. [Amber HH.], 221 AD3d 1338, 1339 [3d Dept 2023]). The parent must comply with the terms and conditions imposed to address the difficulties that led to the suspended judgment, and, where it is shown by a preponderance of the evidence that he or she failed to do so, "Family Court may revoke the suspended judgment and, if in the child's best interests, terminate parental rights" (Matter of Max HH. [Kara FF.], 170 AD3d 1456, 1458 [3d Dept 2019]; see Matter of Michael B., 80 NY2d 299, 311 [1992]; Matter of Alexis X. [Tara Y.], 222 AD3d at 1214).
Petitioner here came forward with testimony from the caseworker who had worked with the father since 2021 and described how he had failed to comply with the terms of the suspended judgment in multiple respects. The caseworker specifically described [*2]how the father's compliance with the conditions of the suspended judgment had deteriorated in the spring of 2023 and how he, among other things, missed several scheduled drug screens in June and July 2023 and stopped communicating with petitioner, failing without explanation to attend scheduled visitation with the child or keeping petitioner apprised of his living arrangements as required. The father himself testified in response and, while he attempted to justify his behavior in various respects, even he acknowledged that he had failed to undergo drug screening, attend visits with the child or keep the caseworker apprised of his whereabouts as required under the terms of the suspended judgment. Family Court credited the largely undisputed testimony of the caseworker that the father had violated the terms of the suspended judgment in significant respects and, according deference to its decision to do so, a sound and substantial basis exists in the record to support its revocation of the suspended judgment (see Matter of Elaysia GG. [Amber HH.], 221 AD3d at 1340; Matter of Donte LL. [Crystal LL.], 141 AD3d 907, 908 [3d Dept 2016]).
Turning to the disposition, the father complains that Family Court conducted the dispositional hearing immediately after it had concluded the fact-finding hearing and made its findings, but Family Court was empowered to begin that hearing "immediately after the required findings are made" (Family Ct Act § 625 [a]). As the father offered no objection to immediately beginning the dispositional hearing and, indeed, made clear that he was not seeking to present any witnesses at it, we perceive no error in Family Court's decision to do so (see Family Ct Act § 626 [a]; see e.g. Matter of Nina TT. [Jimmy P.], 218 AD3d 873, 874-875 [3d Dept 2023]).
As for the proof itself, the fact that the father had failed to comply with the conditions of a suspended judgment to begin with did not automatically warrant termination of his parental rights, but was strong evidence that termination would be in the best interests of the child (see Matter of Alexis X. [Tara Y.], 222 AD3d at 1214; Matter of Max HH. [Kara FF.], 170 AD3d at 1458). The caseworker testified that the father had reestablished contact with petitioner in November 2023 but had only visited with the child four times after that point, although he missed a few visits during that period because he was incarcerated from December 2023 to February 2024. The caseworker further confirmed that the father continued to avoid required drug screening after his release from jail. The proof at the fact-finding hearing and the dispositional hearing also reflected that the child had been living with his foster family since 2020 and that his foster parents, who had provided him with an appropriate living situation and developed a strong bond with him, aimed to adopt him if the opportunity presented itself. Family Court cited that evidence, as well as the proof that the father had tested positive [*3]for alcohol and marihuana use on those infrequent occasions when he submitted to drug screening as requested, to determine that the best interests of the child lie in terminating the parental rights of the father. We are satisfied that such evidence provided a sound and substantial basis in the record for doing so (see Matter of Nahlaya MM. [Zaianna LL.], 193 AD3d 1294, 1298 [3d Dept 2021], lv denied 37 NY3d 905 [2021]; Matter of Jeremiah RR. [Bonnie RR.], 192 AD3d 1338, 1341 [3d Dept 2021], lv denied 37 NY3d 905 [2021]; Matter of Donte LL. [Crystal LL.], 141 AD3d at 908).
Garry, P.J., Clark, Lynch and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.